**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| TEXAS CAPITAL BANK, | |
|     Plaintiff, | |
|     v. | Civil Action No.2:23-cv-00156 |
| GOVERNMENT NATIONAL MORTGAGE ASSOCIATION and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | Judge Kacsmaryk |
|     Defendants. | |

**THE UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

The United States, on behalf of its agencies the Government National Mortgage Association ("GNMA" or "Ginnie Mae") and United States Department of Housing and Urban Development ("HUD"), respectfully files this Motion to Dismiss the Complaint (Dkt. # 1) under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

STANDARDS OF REVIEW ...........................................................................................5

ARGUMENT ...................................................................................................................6

I.      Each of TCB's Claims Fail as a Matter of Law Because GNMA Had Express
Authority to Eliminate TCB's Interest in the Tails. ..................................................6

II.     The APA Claim Is Improper and Fails as a Matter of Law. .................................10

        A.      TCB's Theory that GNMA and HUD Exceeded Their Statutory and
                Regulatory Authority Fails as a Matter of Law. ...............................11

                1.      The Statute and Regulations Expressly Authorized GNMA's Action.
                        ............................................................................................11

                2.      HUD Did Not Violate Its Statutory Obligations. .......................11

        B.      TCB's Theory that GNMA's Action was Contrary to a Binding Agreement
                Should be Dismissed. ........................................................................12

                1.      The Tucker Act Impliedly Forbids Review. ...............................12

                2.      A Damages Suit in the Court of Federal Claims Provides an Adequate
                        Alternative Remedy, Barring Review Under the APA..................13

                3.      TCB Does Not Have Standing to Assert this Theory....................14

        C.      TCB's Theory that GNMA's Action Violated a Court Order Fails as a
                Matter of Law and Must be Brought to the Issuing Court. ..............14

                1.      A Bankruptcy Court Cannot Impinge GNMA's Rights. ...............15

                2.      TCB's Allegation that GNMA Violated a Court Order Must be
                        Brought to the Issuing Court. ....................................................15

        D.      TCB's Theory that GNMA Violated the Takings Clause Should be
                Dismissed. ........................................................................................16

                1.      TCB Cannot Seek APA Relief for a Compensable Takings Claim.....16

                2.      TCB Failed to Identify a Protected Property Interest Under the
                        Takings Clause. ........................................................................17

        E.      TCB's Theory that GNMA Violated the Due Process Clause Fails. .............18

                1.      TCB Failed to Identify a Protected Property Interest Under the Due
                        Process Clause. ........................................................................18

                2.      The Opportunity to File a Claim Is All the Process that Is Due In
                        Contract Disputes......................................................................19

III.    The Promissory Estoppel Claim Should be Dismissed............................................20

        A.      TCB Failed to Allege a Valid Waiver of Sovereign Immunity for the
                Promissory Estoppel Claim...............................................................20

        B.      TCB Failed to State a Claim for Promissory Estoppel......................21

IV.     TCB's Claim for Tortious Interference with Property Should be Dismissed. ...........23

        A.      Congress Has Not Waived Sovereign Immunity for the Tortious Interference
                Claim. ..............................................................................................23

        B.      TCB Tortious Interference Claim Fails as a Matter of Law. ............24

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Amoco Prod. Co. v. Hodel*, 815 F.2d 352 (5th Cir. 1988) ........................................................ 12

*Anderson v. United States*, 344 F.3d 1343 (Fed. Cir. 2003) ...................................................... 14

*Anytime Fitness, L.L.C. v. Thornhill Bros. Fitness, L.L.C.*, 85 F.4th 321 (5th Cir. 2023) ............ 8

*Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623 (5th Cir. 2023) ........................................ 6

*Armendariz-Mata v. U.S. Dep't of Justice*, 82 F.3d 679 (5th Cir. 1996) ..................................... 10

*Bair v. United States*, 515 F.3d 1323 (Fed. Cir. 2008) ................................................................ 17

*Bateman v. F.D.I.C.*, 112 F.Supp.2d 89 (D. Mass. 2000) ........................................................... 20

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) .................................................. 18

*Bosco v. U.S. Army Corps of Engineers*, 611 F. Supp. 449 (N.D. Tex. 1985) ........................... 24

*Caesars Mass. Mgmt. Co. v. Crosby*, 778 F.3d 327 (1st Cir. 2015) ........................................... 19

*Calvillo v. Gonzalez*, 922 S.W. 2d 928 (Tex. 1996) ................................................................... 23

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) ............................................................ 17

*DeBoer v. Pennington*, 287 F.3d 748 (9th Cir. 2002) ................................................................. 19

*Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262 (5th Cir. 2012) ........................... 17

*F.A.A. v. Cooper*, 566 U.S. 284 (2012) ...................................................................................... 20

*F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) ..................................................................................... 20

*Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380 (1947) ...................................... 22

*Fort Bend Cnty. v. U.S. Army Corps of Eng'rs.* 59 F.4th 180 (5th Cir. 2023) ........................... 16

*Haaland v. Brackeen*, 599 U.S. 255 (2023) ............................................................................... 13

*Hignell-Stark v. City of New Orleans*, 46 F.4th 317 (5th Cir. 2022) ......................................... 18

*Hinojosa v. Horn*, 896 F.3d 305 (5th Cir. 2018) ....................................................................... 13

*In re Crocker*, 941 F.3d 206 (5th Cir. 2019) .............................................................................. 15

*In re Debbs*, 158 U.S. 564 (1895) .............................................................................................. 15

*In re Reverse Mortgage Investment Trust Inc.*, Case No. 22-11225, ECF No. 170 (Bankr. D. Del.
  Dec. 8, 2022) ............................................................................................................................. 4

*Jablon v. United States*, 657 F.2d 1064 (9th Cir. 1981) ........................................................ 20, 21

*Jones v. Dep't of Health & Human Servs.*, 843 F.2d 851 (5th Cir. 1988) ................................... 21

*Knick v. Township of Scott*, 139 S. Ct. 2162 (2019) ................................................................... 16

*Kosak v. United States*, 465 U.S. 848 (1984) ............................................................................. 23

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992) ............................................................... 17

*Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001) ......................................................... 19

*McCutchen v. United States*, 14 F.4th 1355 (Fed. Cir. 2021) ................................................ 17, 19

*McLin v. Twenty-First Judicial Dist.*, 79 F.4th 411 (5th Cir. 2023) ........................................... 6

*McNeily v. United States*, 6 F.3d 343 (5th Cir. 1993) ............................................................. 23

*MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964 (5th Cir. 2014) ......................... 21

*Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414 (1990) ............................................. 20, 21

*Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ............................................... 13

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W. 3d 74 (Tex. 2001) .................... 24

*Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727 (5th Cir. 2008) ................................ 18

*Rimmer v. Holder*, 700 F.3d 246 (6th Cir. 2012) .................................................................. 13

*Ski River Devel., Inc. v. McCalla*, 167 S.W.3d 121 (Tex. App. 2005) ...................................... 24

*Truman v. United States*, 26 F.3d 592 (5th Cir. 1994) ............................................................ 23

*Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023). .................................................................... 17

*United States v. Bess*, 357 U.S. 51 (1958) ........................................................................... 8

*United States v. Thompson*, 749 F.2d 189, 193 (5th Cir. 1984) ............................................. 22

*W. Nat. Bank v. United States*, 8 F.3d 253 (5th Cir. 1993) ................................................... 8

*Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985) ...................................................... 16

*XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770 (2015) ................................................. 21

**Statutes**

11 U.S.C. § 105 ................................................................................................................ 15

12 U.S.C. § 1715z-20 ..................................................................................................... 2, 12

12 U.S.C. § 1721 ....................................................................................................... 5, 6, 15, 22

28 U.S.C. § 1491 ............................................................................................................. 12

28 U.S.C. § 2680 ......................................................................................................... 20, 23

5 U.S.C. § 701 ................................................................................................................ 10

5 U.S.C. § 702 ............................................................................................................ 10, 12

**Other Authorities**

Restatement (Second) of Torts § 766 .................................................................................. 24

Restatement (Third) of Torts: Liab. for Econ. Harm § 17 ...................................................... 23

Restatement (Third) of Torts: Liab. for Econ. Harm § 18 ...................................................... 23

Restatement of Contracts § 90 ......................................................................................... 21

Uniform Commercial Code § 2-403 ..................................................................................... 8

Uniform Commercial Code § 9-404 ..................................................................................... 8

**Regulations**

24 C.F.R. § 206.121 ........................................................................................................ 12

24 C.F.R. § 206.19 .......................................................................................................... 2

24 C.F.R. § 320.15 ........................................................................................................ 11

## <u>INTRODUCTION</u>

When Reverse Mortgage Funding, LLC ("RMF") defaulted on its obligations, GNMA exercised its right to extinguish RMF's interest in certain mortgages in order to ensure the timely payment to investors in securities backed by those mortgages. Plaintiff Texas Capital Bank ("TCB") also had an interest in those mortgages—prior to extinguishment—because RMF had pledged its limited interest in those mortgages to TCB as collateral for a loan. TCB's interest derived entirely from RMF. By extinguishing RMF's interest, GNMA necessarily eliminated TCB's interest as well. By law, the mortgages were the "absolute property" of GNMA.

TCB's complaint alleges that it was wrongful or unlawful for GNMA to cause the elimination of TCB's interest. But TCB ignores that each of the relevant authorities—GNMA's charter statute, the implementing regulations, GNMA's Guide, GNMA's contract with RMF, TCB's own contract with RMF, and the bankruptcy court orders—repeatedly and unambiguously disclosed that GNMA had a right in the event of default to extinguish the issuer's interest in the mortgages and related interests. TCB's contract with RMF and the bankruptcy court order also expressly stated that TCB's right to a lien was subject to GNMA's extinguishment rights. TCB is a sophisticated entity with substantial experience in this field and was well aware of and familiar with these authorities. Because GNMA had a right to extinguish RMF's interest, which necessarily eliminated TCB's interest, TCB's complaint is without merit and should be dismissed.

Under the Administrative Procedure Act ("APA"), TCB asserts that GNMA's action was contrary to law by exceeding its statutory authority, breaching a binding agreement, violating a court order, violating the takings clause, and violating the due process clause. Each theory for the APA claim fails as a matter of law. GNMA's action did not exceed its statutory authority, breach a binding agreement, or violate a court order, because each of those authorities expressly authorized GNMA's action. Moreover, the APA does not authorize claims asserting breach of

contract, a violation of another court's order, or a compensable takings claim. The takings and due process claims should also be dismissed because TCB did not have a protected property interest and the opportunity to file a suit is all the process that is due for a contract-based right.

The common law claims for promissory estoppel and tortious interference with property must be dismissed because TCB failed to allege a valid waiver of sovereign immunity. The promissory estoppel claim should also be dismissed because TCB could not reasonably rely on an alleged oral promise that would have been unauthorized and GNMA would not have been able to keep. And the tortious interference claim should also be dismissed because any interest of TCB was explicitly subject to GNMA's right to extinguish such interest, and GNMA did not cause a breach of an existing contract.

## **BACKGROUND**

RMF's bankruptcy had the potential to affect two government programs that operate in the reverse mortgage space. Under the Home Equity Conversion Mortgage ("HECM") program, the Federal Housing Administration ("FHA) insures HECM loans, which allow senior homeowners to borrow funds with their home equity as collateral. *See* 12 U.S.C. § 1715z-20(a). Unlike a traditional mortgage, in which the borrower borrows a lump sum at once and repays the loan with regular payments, HECMs are structured as "reverse mortgages" in which disbursements are made to the borrower (on a regular or unscheduled basis) with the loan balance increasing over time. *See* 24 C.F.R. § 206.19.

Under the HECM Mortgage-Backed Securities ("HMBS") program, GNMA guarantees the timely payment of principal and interest to investors in securities based on and backed by HECMs. *See generally* Ginnie Mae Handbook 5500.3 (the "Guide"), Ch. 35.[1] In the HMBS

---

[1] Chapter 35 of the Guide is attached as Exhibit 1-D in the Appendix. The Complaint fairly incorporates the Guide. Doc. 1 ¶ 22.

program, certain financial institutions ("Issuers") bundle into a security (an HMBS) the right to certain future cash flows derived from HECMs and sell that security into the secondary market. *See* App. 31. The portion of a HECM balance that has been securitized into a given HMBS is known as a "participation." *Id*. Because the balance of a HECM generally increases over time, the balance from the initial disbursement under the HECM may be bundled in one security, and balances from later disbursements, if securitized, will be bundled in separate securities. *Id.* Thus, the balance on one HECM may be splintered into multiple HMBSs. *Id.*

To become a GNMA-approved Issuer in the HMBS program, the Issuer must agree to GNMA's standard HMBS Guaranty Agreement.[2] Per this contract, GNMA's guaranty attaches at the moment the first HMBS associated with a given HECM is issued. At that same moment, in exchange for the guaranty, the Issuer assigns all "right, title, and interest … in and to" the mortgage—the whole HECM, even sums that have not yet been disbursed or securitized—to GNMA. App. 9, at § 3.01. GNMA provides the Issuer with nominal title to HECM for servicing purposes and entitles the Issuer to receive servicing fees and certain reimbursements. App. 12, at § 4.03. These entitlements terminate upon extinguishment, at which point all benefits and burdens of absolute ownership revert to GNMA. *Id.*

RMF was an FHA-approved lender in the HECM program and a GNMA-approved Issuer in the HMBS program. Doc. 1 ¶ 3. Via the Guaranty Agreement, RMF agreed to fund payments owed to borrowers and investors. *Id*.; App. 11 (§ 4.01(d)); App. 14 (§ 6.01). RMF further agreed that GNMA would have the power to terminate RMF's participation in the HMBS program and extinguish RMF's interests if RMF defaulted on its obligations. App. 33; App. 18-20 (Article X).

---

[2] The "Guaranty Agreement" is attached as Exhibit 1-A in the Appendix. The Complaint fairly incorporates the Guaranty Agreement. Doc. 1 ¶ 22. Form 11705, showing RMF's most recent execution of the Guaranty Agreement, is attached as Exhibit 1-B in the Appendix.

To fund its operations, RMF relied on credit facilities from TCB and other lenders, in part secured by RMF's limited interest in HECM as collateral. Doc. 1 ¶ 28–31. TCB memorialized the terms of its financing to RMF in the Loan and Security Agreement, which TCB refers to in the Complaint as the "Tail Agreement."[3] *Id.* ¶ 30. As collateral, RMF pledged to TCB its rights in certain HECM interests that TCB refers to as "Tails." *Id.* Tails is an industry term that refers to additional amounts added to the HECM balance that have not yet been securitized. TCB expressly acknowledged that its interest in the Tails remained "subject to the terms and conditions of the Ginnie Mae Contract." App. 84 (Tail Agreement ¶ 10.1).

RMF filed for bankruptcy on November 30, 2022. Doc. 1 ¶ 3. Within weeks, substantial payments related to the HECM and HMBS serviced by RMF would become due. *Id.* In an attempt to provide RMF with enough liquidity to fund the payments, several entities, including RMF's parent company and TCB, extended financing to RMF. *In re Reverse Mortgage Investment Trust Inc.*, Case No. 22-11225, ECF No. 170 (Bankr. D. Del. Dec. 8, 2022) ("Second Interim DIP Order")[4]; App. 109. TCB entered an agreement with RMF's estate to provide debtor-in-possession financing to RMF during the bankruptcy, and the bankruptcy court approved the financing in the Second Interim DIP Order on December 8, 2022. In broad language, the Second Interim DIP Order explicitly disclaimed modifying any of GNMA's rights or duties under "any contract [or] guaranty agreement" between RMF and GNMA. App. 163–64 (¶ 53(a)). Moreover, the order explicitly disclaimed that it "authorize[d] or grant[ed] any lien or security interest" that "impair[ed] HUD's

---

[3] The Tail Agreement is attached as Exhibit 2 in the Appendix. The Complaint fairly incorporates the Tail Agreement. Doc. 1 ¶ 30–31.

[4] The Second Interim DIP Order is attached as Exhibit 3 in the Appendix for the court's convenience.

interest in, or rights to . . . the mortgages or participations backing or otherwise associated with GNMA guaranteed securities [or] any related collateral." App. 164 (¶ 53(c)).

Meanwhile, RMF's stakeholders attempted to negotiate the transfer of RMF's portfolio to another lender, but those efforts were not successful. Doc. 1 ¶ 41. Despite the infusion of financing from TCB and others, RMF advised that it would not be able to fund payments owed to HMBS investors. Accordingly, on December 20, 2022, GNMA exercised its right to extinguish RMF's interests in the HECMs and sent a Notice of Default to RMF. Doc. 1 ¶ 53–55. GNMA has since serviced RMF's portfolio, including funding all borrower draws and payments to investors.

When GNMA extinguished RMF's interests in the HECMs, it necessarily eliminated TCB's interest in the HECMs, because TCB's interest derived wholly from RMF and the entire loan became the "absolute property" of GNMA upon extinguishment. 12 U.S.C. § 1721(g)(1); App. 19 (Guaranty Agreement § 10.04). TCB attempts to draw a distinction between the original principal balance on the HECM and the additional amounts added to the balance of the HECM over time (commonly referred to as "Tails"). TCB argues that GNMA could not have extinguished TCB's interest in the Tails. Doc. 1 ¶ 58–68. But the plain text of the statute, regulations, and agreements authorize GNMA to extinguish all interests in the HECMs, and the Tails are part of the HECM. To extinguish all interests in the HECMs necessarily includes extinguishment of any interests in the Tails.

On October 4, 2023, TCB filed its Complaint bringing three counts:  Count I asserts claims under the APA, Count 2 asserts a claim for promissory estoppel, and Count 3 asserts a claim for tortious interference with property rights. Each Count should be dismissed in full.

## STANDARDS OF REVIEW

On a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the party seeking to invoke federal jurisdiction has the burden of proof. *McLin v. Twenty-First Judicial Dist.*, 79 F.4th 411,

415 (5th Cir. 2023). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court must accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs." *Id.* When reviewing a motion to dismiss, the court may consider "all documents incorporated into the complaint by reference as well as matters of which we may take judicial notice." *Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023) (citation omitted).

<u>**ARGUMENT**</u>

I.   <u>**Each of TCB's Claims Fail as a Matter of Law Because GNMA Had Express Authority to Eliminate TCB's Interest in the Tails.**</u>

TCB's claims are each premised on the mistaken notion that GNMA's extinguishment of RMF's interest in the mortgages, which caused the elimination of TCB's interest in the Tails, was wrongful or unlawful. But the governing statute, regulations, and agreements cited in the Complaint expressly authorized GNMA to extinguish all interests in the HECM upon default, necessarily including TCB's interest in the Tails.

Congress authorized GNMA to "provide by contract" for the extinguishment of any "right, title, or interest of the issuer" in a HECM upon the Issuer's default. 12 U.S.C. § 1721(g)(1). The statute adds that upon the exercise of this power, the HECM shall become "the absolute property" of GNMA. *Id.*

Following the statute, GNMA "provide[d] by contract" for this extinguishment right in its Guaranty Agreement with RMF. Section 10.04 of the Guaranty Agreement provides that GNMA may "automatically effect and complete the extinguishment of any redemption, equitable, legal, or other right, title, or interest of the Issuer in the Mortgages, the related Ginnie Participations and any Other Interests." App. 19. Section 10.05 adds that, upon extinguishment, "the Issuer shall have

no further right to service the Mortgages, the Ginnie Participation pools, any Other Interests and Securities, . . . and shall have no right to share in the proceeds of any sale or transfer of rights or interests related to them." App. 19. These provisions make plain that GNMA had the right to extinguish any interest the Issuer has in the Mortgages, related Ginnie Participations, or Other Interests.

This broad extinguishment right extends to the collateral at issue here: TCB's security interest in the HECM Tails. Section 3.08 of the Guaranty Agreement defines "Other Interests" to include "participation interests in advances made to or on behalf of mortgagors in respect of any Mortgages and related amounts, including but not limited to accrued interest on such mortgages, related servicing fees and monthly insurance premiums paid to FHA to maintain mortgage insurance on such mortgages that do not constitute Ginnie Participations." App. 10. TCB's own description of its security interest meets this definition. The Complaint alleges that HECM Tails are "additional amounts" added to the balance of HECM loans from, "among other things, additional draws from the borrower, accrual of interest, mortgage insurance premiums, and other fees." Doc. 1 ¶ 24. The Complaint's reference to "additional draws from the borrower" is covered in Section 3.08 as "an advance made to or on behalf of mortgagors." App. 10. Section 3.08 then explicitly mentions the "fees and monthly insurance premiums," which TCB alleges are part of the Tails. App. 10. Removing any doubt, TCB's own Tail Agreement with RMF defines "HECM Tails" in terms that closely track the Guaranty Agreement's definition of Other Interests: "amounts created by additional draws by the Obligor, interest accruals, mortgage insurance premiums, fees, or charges." App. 60. Putting it together, the Guaranty Agreement expressly authorizes GNMA to

extinguish the Issuer's interest in the Mortgages (from which Tails are inseparable[5]) and "any Other Interests," the definition of which specifies the HECM accruals that TCB calls Tails. App. 19.

Additionally, the right to extinguish the Issuer's (in this case, RMF's) interest in Tails necessarily includes the right to extinguish TCB's interest in the Tails. TCB's interest is wholly derivative of RMF's interest. It is black letter law that RMF could only convey a security interest in the property rights it already owned, subject to any limitations that applied to RMF itself. *See, e.g., W. Nat. Bank v. United States*, 8 F.3d 253, 255 (5th Cir. 1993) ("It is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere*.") (quoting *United States v. Bess*, 357 U.S. 51, 57 (1958)); Uniform Commercial Code § 9-404(a)(1) (describing the rights of one who acquires interests in a contract as being subject to "all terms of the agreement"); *cf.* Uniform Commercial Code § 2-403(1) (describing the default rule by which a purchaser of goods acquires only the title "which his transferor had or had power to transfer"); *see also Anytime Fitness, L.L.C. v. Thornhill Bros. Fitness, L.L.C.*, 85 F.4th 321, 326 (5th Cir. 2023) (reiterating that assignment of executory contracts in bankruptcy requires that the assignee assume all terms in the contract, good and bad).

The Tail Agreement recognizes that TCB's interest derived from RMF's interest. *See* App. 68 (Section 3.1 assigning TCB "a continuing first priority security interest in all of [RMF's] right, title and interest in and to all of the Collateral" and defining "Collateral" as those items "in which [RMF] now has or at any time hereafter has or acquires any right, title or interest," including RMF's "rights, title and interest in HECM Tails"). Accordingly, because RMF's interest in the

---

[5] Section 1.05(t) of the Guaranty Agreement defines "Mortgage" to include "a security instrument, together with the obligation secured thereby … and all claims, funds, payments, proceeds, recoveries, property, monies or assets related in any way thereto." App. 6.

Tails was subject to extinguishment upon default, the interest RMF pledged to TCB as collateral necessarily carried the same limitations. RMF could not somehow unilaterally shed the limitations on its interest by conveying the interest to another.

In fact, RMF and TCB explicitly acknowledge in the Tail Agreement that TCB's assigned interest remains subject to GNMA's rights. *See* App. 69 (In Section 3.8, TCB "acknowledges that the pledge, assignment or grant of a first priority security interest in any Collateral or Lien on any HECM Tail Collateral, or the exercise of [TCB's] rights and remedies hereunder, is subject to the rights and interests of Ginnie Mae under the Guide"); App. 84 (In Section 10.1, providing that TCB's rights in the event of default "shall be subject to the terms and conditions of the Ginnie Mae Contract, if applicable").

Moreover, contrary to TCB's assertion, the Second Interim DIP Order does not in any way prohibit GNMA from extinguishing interests in the HECM loans. Instead, the order expressly preserves GNMA's rights and disclaims establishing a superior lien for TCB. App. 163 (Second Interim DIP Order ¶ 53(a) providing that "[N]othing in this Second Interim DIP Order or the DIP Loan Documents shall . . . modify, impair or affect any contract, guaranty agreement," or other agreement between RMF and GNMA.); *see also* App. 164 (¶ 53(c) providing that nothing in the order shall "subordinate, prime, authorize, or grant any lien or security interest . . . or otherwise impair HUD's interest in, or rights to . . . the mortgages or participations backing or otherwise associated with GNMA guaranteed securities [or] any related collateral."). The order further clarified that "in the event there is any conflict between this Second Interim DIP Order and the DIP Loan Documents, on the one hand, and any HUD Agreement on the other hand, the HUD Agreement shall control." App. 163.

In the face of RMF's binding agreements authorizing GNMA to extinguish its interests in the HECM, including in the HECM Tails, and TCB's own financing agreement and the bankruptcy court's order acknowledging and preserving GNMA's rights, the Complaint alleges that government officials made oral promises not to extinguish TCB's interest in the Tails.[6] As a matter of law, TCB could not rely on any supposed oral promises at odds with rights provided to GNMA by statute and contract. *See infra* Section III.B. As explained in more detail below, TCB's claims thus fail as a matter of law.

## II.     The APA Claim Is Improper and Fails as a Matter of Law.

The APA allows persons who have suffered a legal injury due to certain final agency actions that were contrary to law to bring an action against the agency seeking relief other than monetary damages. *See generally* 5 U.S.C. §§ 701–706. The APA claim applies only to the request for declaratory relief, because the APA only permits claims "seeking relief other than money damages." 5 U.S.C. § 702; *Armendariz-Mata v. U.S. Dep't of Justice*, 82 F.3d 679, 682 (5th Cir. 1996) ("[W]hen the substance of the complaint at issue is a claim for money damages, the case is not one covered by § 702, and, hence, sovereign immunity has not been waived.").

TCB alleges five theories for why GNMA's action was contrary to law: (1) it exceeded GNMA's statutory and regulatory authority; (2) it was contrary to a binding agreement; (3) it was contrary to a court order; (4) it violated the Fifth Amendment's takings clause; and (5) it violated the Fifth Amendment's due process clause. Each theory fails as a matter of law, and the APA claim therefore should be dismissed.

---

[6] Despite TCB's assertion to the contrary, there was no oral promise.

### A. TCB's Theory that GNMA and HUD Exceeded Their Statutory and Regulatory Authority Fails as a Matter of Law.

#### 1. The Statute and Regulations Expressly Authorized GNMA's Action.

TCB's first theory for why GNMA's action was contrary to law is that GNMA exceeded its statutory and regulatory authority by eliminating TCB's interest in the HECM Tails. But, as discussed in Section I above, the governing statute expressly authorized GNMA's actions.

The implementing regulations also recognize GNMA's extinguishment rights. The regulations provide that, "[u]pon any default by the issuer," GNMA may "extinguish all the right, title, or other interest of the issuer in the pooled mortgages" and "[e]xercise such other rights and remedies as it may have." 24 C.F.R. § 320.15(b). The GNMA Guide likewise provides that GNMA has the right to "[e]xtinguish any redemption, equitable, legal, or other right, title, or interest of the Issuer, ***and anyone claiming through the Issuer***, in the mortgages in pools and loan packages for which the Issuer has Issuer responsibility." App. 25 (Guide, Ch. 23, Part 3.B) (emphasis added).[7]

Because the charter statute, the implementing regulations, and the Guide each specifically authorize GNMA to extinguish an Issuer's rights in guaranteed mortgages and other related interests, GNMA did not exceed its legal authority by extinguishing the interests in the Mortgages and related Tails. TCB's theory to the contrary thus fails as a matter of law.

#### 2. HUD Did Not Violate Its Statutory Obligations.

TCB briefly alleges that HUD "failed to discharge [its] statutory responsibility" to make borrower payments after RMF declared bankruptcy. Doc. 1 ¶ 49. HUD had no such obligation. To

---

[7] The Guide is incorporated by reference into both the implementing regulations, *see* 24 C.F.R. § 320.1, and the Guaranty Agreement at § 1.06. Chapter 23 of the Guide has been included in the Appendix as Exhibit 1-C.

be sure, the National Housing Act requires HUD to provide HECM borrowers with funds owed but not received due to a lender's default. 12 U.S.C. § 1715z-20(i)(1)(A). But HUD may step in and make a payment to a borrower *only* if HUD determines that a servicer is unable or unwilling to make borrower payments and has defaulted. 24 C.F.R. § 206.121. TCB does not allege that HUD made such a determination. As such, TCB has not plausibly stated a claim that HUD failed to discharge its obligations.

    **B.**    **TCB's Theory that GNMA's Action was Contrary to a Binding Agreement Should be Dismissed.**

TCB's second theory for why GNMA's action was contrary to law is that it breached a binding agreement. As explained in Section I, GNMA's action was expressly authorized by contract, precluding TCB's claim to the contrary. This theory is also unavailing because TCB cannot assert a contract-based claim under the APA, TCB has an adequate alternative remedy, and TCB does not have standing to assert this theory.

    **1.**    **The Tucker Act Impliedly Forbids Review.**

Section 702 of the APA provides that "[n]othing" in the APA "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." Under binding case law, the Tucker Act impliedly forbids contract-based claims against the United States seeking declaratory or injunctive relief.

The Tucker Act permits contract-based claims in excess of $10,000 against the United States in the Court of Federal Claims. 28 U.S.C. § 1491(a). But the Tucker Act does not authorize contract claims seeking declaratory or injunctive relief. *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 359 (5th Cir. 1988) (finding that a claim under the Tucker Act "must be one against the United States for money"). Accordingly, within the meaning of § 702 of the APA, the Tucker Act impliedly forbids contract-based claims against the United States seeking declaratory or injunctive

relief. *See, e.g.*, *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017). TCB's assertion that GNMA's action was contrary to law because it breached a binding agreement is a contract-based claim, and TCB cannot assert contract-based claims under the APA.

### 2.    A Damages Suit in the Court of Federal Claims Provides an Adequate Alternative Remedy, Barring Review Under the APA.

Section 704 of the APA makes reviewable final agency action "for which there is no other adequate remedy." The alternative remedy need not provide "identical" relief. *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018). More, the adequacy of the alternative remedy "does not depend on a party's ability to prevail on the merits." *Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012). The adequate alternative remedy must simply be available to TCB.

Here, TCB could pursue its claim that GNMA's action violated a binding agreement in the Court of Federal Claims under the Tucker Act. In place of a declaratory judgment, the Court of Federal Claims could award monetary damages. The award of damages would be equivalent, if not superior, to the declaratory relief sought in this case. TCB seeks a declaratory judgment in order to obtain a subsequent order compensating TCB for the loss of its lien. If the declaratory judgment is the only relief that TCB intends to seek, it would not redress TCB's injury. A declaratory judgment alone does not provide redressability for standing purposes unless the plaintiff may utilize the judgment in another action for preclusive effect. *See Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) ("What saves proper declaratory judgments from a redressability problem—but is lacking here—is that they have preclusive effect on a traditional lawsuit that is imminent.") (citation omitted). A suit for damages offers a more direct route to compensation. Accordingly, TCB has an adequate alternative remedy for this theory.[8]

---

[8] TCB's contract-based claim would fail in the Court of Federal Claims for the same reasons explained in Sections I, *infra*, and II.B.3, *supra*. But the venue is available to TCB, and, if not for

### 3.     TCB Does Not Have Standing to Assert this Theory.

TCB alleges that GNMA's action was contrary to law because it violated a binding agreement. But privity of contract does not exist between TCB and GNMA for any of the contracts referenced in the Complaint. TCB does not have standing to assert that GNMA breached a contract to which TCB was not a party or a contract to which GNMA was not a party.

"To have standing to sue the sovereign on a contract claim, a plaintiff must be in privity of contract with the United States." *Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003). The Complaint mentions several contracts: the Tail Agreement between TCB and RMF; the Guaranty Agreement between GNMA and RMF; the LCP Loan Agreement between LCP and RMF; the Intercreditor Agreement among LCP, TCB, and RMF; and the Acknowledgement Agreement among LCP, RMF, and GNMA. Conspicuously absent is any mention of a contract between GNMA and TCB. As such, TCB is not in privity of contract with Defendants and cannot maintain a claim for breach of contract against Defendants.[9]

### C.     TCB's Theory that GNMA's Action Violated a Court Order Fails as a Matter of Law and Must be Brought to the Issuing Court.

TCB's third theory for why GNMA's action was "not in accordance with law" is that GNMA's action was contrary to the Second Interim DIP Order. This theory is without merit because: (1) as explained in Section I, the order expressly reserved GNMA's extinguishment rights

---

the fatal defects to TCB's claim that would surface in any forum, could provide an adequate remedy.

[9] TCB does not allege that it is an intended third-party beneficiary of any agreement with GNMA. Nor could it. Section 1.02 of the Guaranty Agreement forecloses any intent to create a third-party beneficiary: "Neither Ginnie Mae's entry into this Agreement nor its operation of the mortgage-backed securities ('MBS') program is intended to create any right of action on the part of any borrower-mortgagor or any other person or entity, except as expressly provided herein or in any other instrument duly executed by Ginnie Mae." App. 4.

and disclaimed creating a superior lien for TCB; (2) by statute, a bankruptcy court order cannot trump GNMA's extinguishment rights; and (3) TCB must assert this claim in the bankruptcy court.

### 1.    A Bankruptcy Court Cannot Impinge GNMA's Rights.

Congress precludes the Bankruptcy Court from issuing an order that limits GNMA's rights in the Guaranty Agreement or ownership rights in the HECMs. Section 1721(g)(1) of GNMA's charter statute states that "no Federal law [save for certain exceptions not relevant here], shall preclude or limit the exercise by [Ginnie Mae] of (A) its power to contract with the Issuer on the terms stated in the [Charter], (B) its rights to enforce any such contract with the Issuer, or (C) its ownership rights . . . in the mortgages constituting the trust or pool against which the guaranteed securities are issued." 12 U.S.C. § 1721(g)(1). In turn, the bankruptcy court's power to issue orders derives from "federal law," namely 11 U.S.C. § 105(a). Thus, even if the bankruptcy court intended to limit GNMA's extinguishment rights—it didn't, as explained in Section I—the bankruptcy court did not have authority to do so. TCB cannot state a claim that GNMA violated a court order, which would have been void ab initio if it provided what TCB imagines.

### 2.    TCB's Allegation that GNMA Violated a Court Order Must be Brought to the Issuing Court.

Moreover, TCB's allegation that GNMA violated the Second Interim DIP Order is self-evidently an allegation that GNMA is in contempt of the bankruptcy court's order. It is well-established that a party seeking to enforce a court order and to find a party in contempt of that order must bring the complaint to the court that issued the order. *In re Debbs*, 158 U.S. 564, 594–95 (1895) ("[T]he sole adjudication of contempts, and the punishments thereof belonged exclusively, and without interfering, to each respective court."); *In re Crocker*, 941 F.3d 206, 211–16 (5th Cir. 2019) ("[R]eturing to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold respect for judicial process."); *Waffenschmidt v. MacKay*, 763 F.2d 711,

716 (5th Cir. 1985) ("Enforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order."). Accordingly, TCB must assert its allegation that GNMA violated the Second Interim DIP Order in the bankruptcy court.

### D.     TCB's Theory that GNMA Violated the Takings Clause Should be Dismissed.

TCB's fourth APA theory alleges that GNMA violated the Fifth Amendment's takings clause. This theory fails because TCB cannot seek declaratory relief for a compensable takings claim, and because TCB failed to identify a protected property interest.

#### 1.     TCB Cannot Seek APA Relief for a Compensable Takings Claim.

The Supreme Court recently held that "equitable relief is generally unavailable" for a takings claim "because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2176 (2019). The Court explained that because compensation is available under the Tucker Act, "the Federal Government need not worry that courts will set aside agency actions as unconstitutional under the Administrative Procedure Act." *Id.* at 2179. Consistent with *Knick*, the Fifth Circuit has recognized that a party cannot use the APA to obtain a declaratory judgment invalidating an agency action for violating the takings clause. *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*. 59 F.4th 180, 191 (5th Cir. 2023). Noting that courts may not "set[] aside agency action as violating the Takings Clause under [the APA]," the Court held that "[s]uch claims are unavailable when the property owner may obtain compensation in the Claims Court." *Id.* at 191.

Here, TCB may seek to obtain compensation for the alleged taking in the Court of Federal Claims pursuant to the Tucker Act. *See supra* Section II.B.2. Thus, TCB may not use the APA to seek a declaratory judgment for the alleged taking.[10]

> **2.      TCB Failed to Identify a Protected Property Interest Under the Takings Clause.**

To properly allege a violation of the takings clause, "a plaintiff must first demonstrate that he has a protectable property interest." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012). TCB alleges it has a protected "first priority security interest" in the Tails. But TCB's interest in the Tails was not a protected property interest, because it always remained subject to GNMA's pre-existing extinguishment rights.

Property interests are created and defined by "existing rules or understandings." *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 638 (2023). Thus, "the government does not take a property interest when it merely asserts a pre-existing limitation upon the [property] owner's title." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021). This is so because "property interests are acquired subject to 'background principles' of law, and [such] limitations on property rights that otherwise would effect a categorical taking are permissible if they 'inhere in the title itself.'" *Bair v. United States*, 515 F.3d 1323, 1327 (Fed. Cir. 2008) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1029 (1992)). "And valid preexisting federal-law limitations on what otherwise would be state-law property rights are among the limitations that may inhere in title so as to limit compensable property rights." *McCutchen v. United States*, 14 F.4th 1355, 1365 (Fed. Cir. 2021).

Here, the charter statute, the implementing regulations, the Guide, and the Guaranty Agreement each granted GNMA the right to extinguish all interests in the Mortgages, including the Tails. Each of these authorities also predated the Tail Agreement, which itself repeatedly

---

[10] For the same reason, an adequate alternative remedy is available to TCB for the alleged taking.

recognized that TCB's interests were subject to GNMA's rights. Because TCB's interest in the Tails was always subject to GNMA's pre-existing extinguishment rights, GNMA did not take a protected property right from TCB, and TCB's takings theory fails.

### E.     TCB's Theory that GNMA Violated the Due Process Clause Fails.

TCB's fifth and final theory for why GNMA's action was contrary to law under the APA is that GNMA's action violated the Fifth Amendment's Due Process Clause. This theory is without merit because TCB cannot identify a protected property interest and the opportunity to file a lawsuit is all the process that would be due in any case.

#### 1.     TCB Failed to Identify a Protected Property Interest Under the Due Process Clause.

To adequately allege a Due Process claim, the plaintiff must demonstrate a protected property interest under the Due Process Clause. *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). TCB alleges the same property interest as for the takings claim: an interest in the Tails due to its "first priority secured interest" under the Tail Agreement. As with the takings claim, GNMA did not deprive TCB of a protected property interest under the due process clause because TCB's interest in the Tails was expressly subject to GNMA's extinguishment rights.[11]

To establish a protected property interest under the due process clause, a party must have a "legitimate claim of entitlement" to the interest, rather than "a unilateral expectation of it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). These interests are created and "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to

---

[11] Establishing a protected property interest for a takings claim and a due process claim is similar but not the same. *See Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 323–24 (5th Cir. 2022).

those benefits." *Id.* Here, the independent source of TCB's alleged property interest is the Tail Agreement. As explained in Section I, *supra*, the Tail Agreement repeatedly recognizes that TCB's interest in the Tails remained subject to GNMA's rights under the Ginnie Mae Contract, which expressly authorizes GNMA to extinguish any interest in the HECMs, including the Tails. *See* App. 69, 74, 84–86 (Tail Agreement §§ 3.8, 5.21, 10.1, 10.2.3, 10.2.4, 10.4).

As with the takings claim, these "preexisting federal-law limitations" on TCB's contractual expectation "inhere in the title so as to limit" TCB's actual interest. *McCutchen*, 14 F.4th at 1365. TCB does not and cannot contend that it lacked notice of GNMA's extinguishment rights, especially given that TCB's own agreements with RMF acknowledged GNMA's pre-existing rights. *Cf. Caesars Mass. Mgmt. Co. v. Crosby*, 778 F.3d 327, 333–34 (1st Cir. 2015) (recognizing that "even an issued license is not a protected property interest if the recipient is on notice that the license is subject to termination or restriction"). Because GNMA did not deprive TCB of a protected property interest in the Tails, TCB's due process theory fails as a matter of law.

### 2. The Opportunity to File a Claim Is All the Process that Is Due In Contract Disputes.

The due process theory should also be dismissed because TCB received all the process due. The Supreme Court has held that when a party has a contractual dispute with a government entity, the opportunity to sue the entity through the normal judicial process is adequate due process. *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196–97 (2001) ("We hold that if California makes ordinary judicial process available to respondent for resolving its contractual dispute, that process is due process."); *see also DeBoer v. Pennington*, 287 F.3d 748, 750 (9th Cir. 2002) (holding that because the "contract here has not given rise to a greater interest than the contract itself," the deprivation was a mere contractual injury that was adequately protected by the opportunity to bring suit). Here, TCB's alleged injury derives entirely from its contract-based right to a lien. TCB has

19

every opportunity to vindicate whatever rights its agreements provide. The opportunity to pursue those rights is all the process due to TCB.

## III.   The Promissory Estoppel Claim Should be Dismissed.

### A.   TCB Failed to Allege a Valid Waiver of Sovereign Immunity for the Promissory Estoppel Claim.

The United States and its agencies may be sued only if Congress has enacted a clear and express waiver of sovereign immunity. *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012); *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Such a statutory waiver must be "unequivocally expressed," with all ambiguity construed in favor of immunity. *Cooper*, 566 U.S. at 290 (citation omitted). Even if a statute unequivocally waives sovereign immunity, the waiver's scope must nevertheless be construed narrowly in favor of the sovereign. *Id.* at 291. The plaintiff has the burden to demonstrate a valid waiver of sovereign immunity authorizing each claim. *See id.*

The United States has not waived sovereign immunity for promissory estoppel claims. *Jablon v. United States*, 657 F.2d 1064, 1069–70 (9th Cir. 1981) (concluding that the United States has not waived its sovereign immunity for promissory estoppel claims). The Complaint does not plead any sovereign immunity waiver, and any potential waiver would not authorize TCB's claim. The Federal Tort Claims Act ("FTCA") does not waive sovereign immunity because estoppel is essentially a claim for misrepresentation, and the FTCA does not waive immunity for misrepresentation claims. 28 U.S.C. § 2680(h); *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 429–30 (1990) (describing an estoppel claim as being "in practical effect one for misrepresentation" and barred by the misrepresentation exception of the FTCA); *Bateman v. F.D.I.C.*, 112 F.Supp.2d 89, 94 (D. Mass. 2000) (describing an attempt to assert promissory estoppel as an attempted "end run around the FTCA"). Likewise, the Tucker Act does not provide a waiver of sovereign immunity for promissory estoppel claims, and such claims would have to be

brought in the Court of Federal Claims if it did. *XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770, 782–83 (2015) ("Promissory estoppel theory does not fall within the jurisdiction granted to the court by the Tucker Act, and the government has not waived its sovereign immunity with regard to a promissory estoppel cause of action.") (citation omitted).

### B.       TCB Failed to State a Claim for Promissory Estoppel.

Courts have distinguished between promissory and equitable estoppel claims, holding that the former is never permitted and the latter heavily disfavored. *See Jablon v. United States*, 657 F.2d 1064, 1069–70 (9th Cir. 1981) (describing equitable estoppel as a shield, sometimes available against the United States, and promissory estoppel as a sword that is never available against the United States); *see also Jones v. Dep't of Health & Human Servs.*, 843 F.2d 851, 853 (5th Cir. 1988) ("A private individual asserting estoppel against the government has a very heavy burden to bear."). Although the Supreme Court has declined to adopt "a flat rule that estoppel may not in any circumstances run against the government," it has never upheld an application of estoppel against the United States. *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 422–23 (1990).

Even if promissory estoppel were available against GNMA, the Complaint fails to allege facts to satisfy its elements, which are "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014); *see also* Restatement of Contracts § 90. Critically, the reliance and the foreseeability of the reliance must be reasonable. *MetroplexCore*, 743 F.3d at 977; Restatement of Contracts § 90. Moreover, estoppel cannot bind government agencies to payment from the Treasury. *See O.P.M. v. Richmond*, 496 U.S. 414, 426 (1990).

In this case, any reliance on an alleged oral promise not to extinguish TCB's derivative interest in the Tails was unreasonable. As explained in Section I, *supra*, the Second Interim DIP Order expressly reserved GNMA's extinguishment rights and disclaimed establishing a lien for

TCB that modified or impaired GNMA's rights. App. 163–64. It would be unreasonable for TCB to rely on an oral promise not to extinguish TCB's interest in the Tails when GNMA at the same time reserved its right to extinguish those interests in the Second Interim DIP Order.

Reliance was even more unreasonable given that the alleged oral promise was impossible to keep. GNMA could not extinguish RMF's interest in the HECMs without also eliminating TCB's interest in the Tails. The statute requires that upon the exercise of GNMA's extinguishment rights in the event of a default, the HECMs "shall become the absolute property of" GNMA. 12 U.S.C. § 1721(g)(1). The Tails are part of the HECM. GNMA cannot have absolute possession of the HECMs without also having possession of the Tails.

Relatedly, TCB could not rely on the alleged oral promises by government officials because those statements would have been unauthorized and incorrect. As the Supreme Court explained, "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 384 (1947). Citing the principle "that the government cannot be bound by unauthorized or incorrect statements of its agents," the Fifth Circuit has held the plaintiff could not rely on estoppel "[e]ven if [the government official] intentionally lied to [the plaintiff] and intended thereby to induce" the plaintiff to act in reliance thereon. *United States v. Thompson*, 749 F.2d 189, 193 (5th Cir. 1984).

So too here. It would have been incorrect and unauthorized as a matter of law to promise that GNMA would, while exercising its right to extinguish all interests in the HECMs, somehow refrain from eliminating TCB's interest in the Tails. In the event of a default, GNMA could not extinguish RMF's interests in the HECMs without also eliminating TCB's interest in the Tails.

And after GNMA extinguished RMF's interest in the HECMs, there was no mechanism or authority allowing GNMA or HUD to lawfully reimburse TCB.

**IV.     TCB's Claim for Tortious Interference with Property Should be Dismissed.**

TCB vaguely styles this claim as one for "tortious interference with property rights." Doc. 1 at 23. The law recognizes a claim for tortious interference with an existing contract, on the one hand, or a claim for tortious interference with an expected contract or business relation, on the other hand. *See Calvillo v. Gonzalez*, 922 S.W. 2d 928, 929 (Tex. 1996); see also Restatement (Third) of Torts: Liab. for Econ. Harm § 17 (defining tortious interference with contract) & § 18 (defining tortious interference with economic expectation). However construed, the claim must be dismissed because TCB cannot identify a valid waiver of immunity and TCB fails to state a claim.

**A.     Congress Has Not Waived Sovereign Immunity for the Tortious Interference Claim.**

TCB cannot identify a valid waiver of immunity for the tortious interference claim. Although Congress waived sovereign immunity for certain torts in the FTCA, the waiver does not extend to claims "arising out of . . . interference with contract rights." 28 U.S.C. § 2680; *see also Kosak v. United States*, 465 U.S. 848, 852 (1984) (describing section 2680 as containing exceptions to the FTCA's "broad waiver of sovereign immunity"). Regardless of the label placed on a claim by a plaintiff, federal courts lack jurisdiction to hear claims "when the underlying governmental conduct essential to the plaintiff's claim can fairly be read to arise out of conduct that would establish an excepted cause of action." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994) (quoting *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993)).

Regardless of the label used, an allegation of tortious interference with one's business expectancies falls within the FTCA's exception for tortious interference with contract rights, because the alleged tort arises out of the same duty. *See Bosco v. U.S. Army Corps of Engineers*,

23

611 F. Supp. 449, 454–55 (N.D. Tex. 1985) (describing the broad "general duty not to interfere intentionally with another's reasonable business expectancies of trade with third persons, whether or not they are secured by contract") (quoting Restatement (Second) of Torts § 766 cmt. 6). Texas courts have confirmed this general principle by recognizing that tortious interference with economic property rights, such as the right to dispose of property, is "in essence, a claim for tortious interference with a prospective contract or prospective business relation." *Ski River Devel., Inc. v. McCalla*, 167 S.W.3d 121, 140 (Tex. App. 2005). Accordingly, any allegation of tortious interference with a business expectancy falls within the FTCA's tortious interference exception.

Here, TCB alleges that GNMA's extinguishment of RMF's interests "amounted to an intentional interference with TCB's property rights" in the collateral. Doc. 1 ¶¶ 100–105. The source of TCB's alleged property right in the Tails is the Tail Agreement. Thus, TCB alleges that GNMA impaired the value of and interfered with TCB's contractual rights—which falls squarely within the FTCA's exception for interference with contractual rights. Because TCB alleges business harm to its commercial interests in its business dealings with RMF, and the "property rights" at issue are literally contractual rights, the FTCA does not waive immunity for TCB's claim. Accordingly, the Court should dismiss Count III for lack of jurisdiction.

### B.   TCB Tortious Interference Claim Fails as a Matter of Law.

TCB fails to state a claim for tortious interference because GNMA had a right to interfere. Whether construed as a claim for tortious interference with an existing contract or with a business expectancy, justification is a defense to both claims under Texas law. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W. 3d 74, 81 (Tex. 2001). The justification defense applies if the defendant had a legal right to interfere with the contract or expectancy. *Id.* Here, as explained in Section I, *supra*, GNMA had a legal right to extinguish TCB's interest in the Tails pursuant to the statute, the implementing regulations, the Guide, and the Guaranty Agreement. GNMA also

reserved its extinguishment rights in the Second Interim DIP Order. App. 163–64. Accordingly, the justification defense applies as a matter of law.

Relatedly, if construed as a claim for tortious interference with an existing contract, TCB cannot state a claim because GNMA did not cause a breach of any contract. *See supra* Section I. The Tail Agreement and the Second Interim DIP Order each stated explicitly that TCB's interest in the Tails was subject to GNMA's rights under the Guaranty Agreement. The exercise of a right reserved in the agreement itself cannot somehow breach the agreement. For the same reason, if the claim is construed as for tortious interference with an economic expectancy, TCB cannot allege a reasonable expectation in the benefit.

## CONCLUSION

For these reasons, the Complaint should be dismissed in its entirety.

Respectfully submitted,                                   January 10, 2024

*/s/ Shane Huang*
KIRK MANHARDT
KEVIN P. VANLANDINGHAM
SHANE HUANG
Illinois ARDC # 6317316
SAMUEL HOBBS
Alabama Bar # 9776O19E
Department of Justice
Commercial Litigation Branch
Civil Division
P.O. Box 875, Ben Franklin Station
Washington D.C. 20044
TEL: (202) 616-0341
FAX: (202) 514-9159
Email: shane.huang@usdoj.gov

*Attorneys for the United States*