# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

|  |  |
|---|---|
| TEXAS CAPITAL BANK,<br><br>      Plaintiff,<br><br>v.<br><br>GOVERNMENT NATIONAL MORTGAGE ASSOCIATION and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>      Defendants. | Civil Action No. 2:23–cv–00156<br><br>Judge Kacsmaryk |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................1

FACTUAL ALLEGATIONS ..................................................................................2

    A.    TCB's Long-Standing Lending Relationship With RMF And Ginnie Mae ...........2

    B.    Ginnie Mae Induced TCB To Lend To The Bankrupt RMF ...................3

    C.    After Inducing TCB To Lend To The Bankrupt RMF, Ginnie Mae Purported To Extinguish TCB's Lien ......................................................4

LEGAL STANDARDS ...........................................................................................6

ARGUMENT ..........................................................................................................6

I.    THE APA CLAIM IS PROPERLY PLED .....................................................6

    A.    The Complaint States An APA Claim Based On Ginnie Mae's Lack Of Statutory Authority To Extinguish TCB's Lien........................................7

        1.    The Government Misreads The Statutory Language ...................7

        2.    The Government Misunderstands TCB's Property Rights ......10

    B.    The Complaint States An APA Claim Based On Ginnie Mae's Arbitrary And Capricious Actions.......................................................17

II.    THE STATE LAW CLAIMS ARE PROPERLY PLED AND NOT BARRED...............19

    A.    Sovereign Immunity Does Not Bar TCB's State Law Claims .............20

    B.    The Promissory Estoppel Claim Is Properly Pled.................................22

    C.    The TCB's Tortious Interference With Property Rights Claim Is Properly Pled .......................................................................................23

CONCLUSION......................................................................................................24

## **<u>TABLE OF AUTHORITIES</u>**

<u>Page</u>

### <u>Cases</u>

*Alvarado v. PNC Bank Nat'l Ass'n*,
  660 F. Supp. 3d 612 (S.D. Tex. 2023) ...................................................................22

*Anytime Fitness, LLC v. Thornhill Bros. Fitness LLC*,
  85 F.4th 321 (5th Cir. 2023) ...............................................................................12

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. Of Governors of Fed. Reserve
  Sys.*,
  745 F.2d 677 (D.C. Cir. 1984) .............................................................................17

*Bernhard v. Whitney Nat. Bank*,
  523 F.3d 546 (5th Cir. 2008) ...............................................................................24

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988).............................................................................................7

*Clean Water Action v. EPA*,
  936 F.3d 308 (5th Cir. 2019) ...............................................................................7

*Cleveland Reg. Med. Ctr., L.P. v. Celtic Props., L.C.*,
  323 S.W.3d 322 (Tex. App.–Beaumont 2010, pet. denied)...................................24

*Deuell v. Tex. Right to Life Comm., Inc.*,
  508 S.W.3d 679 (Tex. App.–Houston [1st Dist.] 2016, pet. denied).....................24

*Dolan v. U.S. Postal Serv.*,
  546 U.S. 481 (2006).............................................................................................20

*Dorfman v. JPMorgan Chase Bank, N.A.*,
  2018 WL 5074769 (Tex. App.–Fort Worth Oct. 18, 2018, no pet.).......................23

*Edberg v. Laurel Canyon Ranch Architectural Rev. Comm.*,
  2011 WL 541134 (Tex. App.–San Antonio Feb. 16, 2011, pet. denied)................24

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016)...........................................................................................18

*English v. Fischer*,
  660 S.W.2d 521 (Tex. 1983)...............................................................................22

*FDIC v. Meyer*,
  510 U.S. 471 (1994).............................................................................................6

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ............................................................................................18

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ............................................................................................17

*Freeman v. United States*,
    556 F.3d 326 (5th Cir. 2009) ............................................................................20

*Gibson v. United States*,
    809 F.3d 807 (5th Cir. 2016) ............................................................................20

*Greater Bos. Television Corp. v. FCC*,
    444 F.2d 841 (D.C. Cir. 1970) .........................................................................18

*Jackson v. Wright*,
    82 F.4th 362 (5th Cir. 2023) .............................................................................20

*John Deloach Enters., Inc. v. Telhio Credit Union, Inc.*,
    582 S.W.3d 590 (Tex. App.–San Antonio 2019, no pet.) .................................11

*Joiner v. United States*,
    955 F.3d 399 (5th Cir. 2020) ............................................................................20

*King v. Acker*,
    725 S.W.2d 750 (Tex. App.–Houston 1987, no pet.) ........................................23

*Kosak v. United States*,
    465 U.S. 848 (1984) ..........................................................................................20

*Kovac v. Wray*,
    363 F. Supp. 3d 721 (N.D. Tex. 2019) .......................................................13, 15

*Life Partners Inc. v. United States*,
    650 F.3d 1026 (5th Cir. 2011) ..........................................................................21

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989) ..........................................................................................17

*MetroplexCore, LLC v. Parsons Transp., Inc.*,
    743 F.3d 964 (5th Cir. 2014) (per curiam) .......................................................22

*Michigan v. EPA*,
    576 U.S. 743 (2015) ..........................................................................................17

*Motient Corp. v. Dondero*,
    529 F.3d 532 (5th Cir. 2008) ..............................................................................6

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....................................................................................................17

*Neese v. Becerra*,
2022 WL 1265925 (N.D. Tex. Apr. 26, 2022) ...............................................13, 15

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021)..................................................................................................1

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) (per curiam)................................................................6

*Robles v. Mann*,
2016 WL 1613316 (Tex. App.–Corpus Christi Apr. 21, 2016, no pet.)................................23

*Rust v. Sullivan*,
500 U.S. 173 (1991)................................................................................................10

*Sec. State Bank & Tr. v. Bexar Cnty.*,
397 S.W.3d 715 (Tex. App.–San Antonio 2012, no pet.), *abrogated on other grounds by Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180 (Tex. 2022)....................................11

*Shaw Mudge & Co. v. Sher–Mart Mfg. Co., Inc.*,
334 A.2d 357 (N.J. App. Div. 1975)................................................................11, 12

*Suprise v. DeKock*,
84 S.W.3d 378 (Tex. App.–Corpus Christi 2002, no pet.) .....................................23

*Texas v. Becerra*,
575 F. Supp. 3d 701 (N.D. Tex. 2021) ....................................................................7

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011) ...................................................................................6

*United States v. Bell*,
2022 WL 17729413 (5th Cir. Dec. 16, 2022) (per curiam) ...................................15

*United States v. Bess*,
357 U.S. 51 (1958)..................................................................................................12

*United States v. Sec. Indus. Bank*,
459 U.S. 70 (1982)..................................................................................................10

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*,
985 F.3d 472 (5th Cir. 2021) .................................................................................17

*VanDerStok v. Garland*,
86 F.4th 179 (5th Cir. 2023) ....................................................................................7

*W. Nat. Bank v. United States*,
    8 F.3d 253 (5th Cir. 1993) .........................................................................12

*Wages & White Lion Invs., LLC v. FDA*,
    90 F.4th 357 (5th Cir. 2024) (en banc) .................................................1, 18, 19

*Warnock v. Pecos Cnty.*,
    88 F.3d 341 (5th Cir. 1996) ..........................................................................6

*White v. U.S. Corrs., LLC*,
    996 F.3d 302 (5th Cir. 2021) ........................................................................6

## Rules/Statutes

5 U.S.C. § 704 ...............................................................................................7

5 U.S.C. § 706(2)(A) .....................................................................................17

5 U.S.C. § 706(2)(C) .......................................................................................7

12 U.S.C. § 1721(g)(1) ......................................................................3, 6, 7, 8, 9

28 U.S.C. § 1491(a) .......................................................................................16

24 C.F.R. § 320.15(b) ......................................................................................8

24 C.F.R. § 320.15(b)(2) ..................................................................................8

24 C.F.R. § 206.121(a) ...................................................................................19

Fed. R. Civ. P. 12(b)(1) .................................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ..............................................................................1, 6, 13

Administrative Procedure Act..............................................1, 2, 5, 6, 7, 10, 12, 13, 17, 9

Federal Tort Claims Act...............................................................................20, 21

Tex. Bus. & Com. Code Ann. § 9.315 ...............................................................11

## Other Authorities

Federal Housing Authority Ltr. July 11, 2023 *available at*
    https://www.hud.gov/sites/dfiles/OCHCO/documents/2023-15hsgml.pdf ...........................19

Restatement (Second) Of Contracts § 203(c) ...........................................................15

Plaintiff Texas Capital Bank ("TCB"), by and through its attorneys, respectfully files this Opposition to Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and states as follows:

## INTRODUCTION

"If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Wages & White Lion Invs., LLC v. FDA*, 90 F.4th 357, 362 (5th Cir. 2024) (en banc) (quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021)).

Here, TCB dealt with Defendant Government National Mortgage Association ("Ginnie Mae") in the utmost good faith, lending millions of dollars in much-needed financing to help the collapsing Reverse Mortgage Funding LLC ("RMF") continue making payments to senior citizens as part of a mortgage program critical to the federal government. TCB's protection for those loans was a lien on certain collateral, and Ginnie Mae — up to and including Ginnie Mae President Alanna McCargo — assured TCB that the collateral would be a source for repayment. Days after TCB funded the loans, Ginnie Mae extinguished RMF's mortgage servicing rights as the operative statute allows. At the time it extinguished those servicing rights, Ginnie Mae said nothing about any impact on TCB's collateral. But months later, Ginnie Mae took the radical step of announcing that its extinguishment of RMF's servicing rights had also purportedly extinguished TCB's lien — a striking collateral grab unsupported by the statute and contrary to Ginnie Mae's prior dealings with TCB, basic fairness, and common sense. Indeed, the Commissioner of the Federal Housing Administration ("FHA"), which is part of Defendant HUD and is involved with the relevant mortgage program, has stated that Ginnie Mae's brazen action is impermissible and wrong.

As TCB's complaint alleges, Ginnie Mae's seizure of TCB's property (a) violates the Administrative Procedure Act ("APA") because it is unauthorized and arbitrary, (b) creates

liability for promissory estoppel given the agency's stark breach of its word, and (c) constitutes tortious interference with property rights.  Defendants' (hereinafter, "the Government") motion to dismiss does not come close to establishing that those claims fail on the face of the complaint.  As to the APA claim, the Government's motion focuses almost entirely on Ginnie Mae's authority to extinguish *RMF*'s interests in the *mortgage-servicing rights* pursuant to a *contract* between Ginnie Mae and RMF.  But that does nothing to undermine TCB's claim that Ginnie Mae lacked statutory authority to extinguish *TCB*'s interest in its *collateral*, which was not only separate from the servicing rights but also subject to *no contract* between TCB and Ginnie Mae.  Nor does the Government demonstrate that its breach of its promise to TCB — a promise on which TCB relied to the tune of tens of millions of dollars — fails to state a claim under the APA or the alleged state tort theories, all of which trigger sovereign-immunity waivers.  At minimum, factual disputes on critical questions, from the nature of TCB's property interest to the commitments exchanged by the parties, preclude dismissal on the pleadings alone.  The Government's motion should accordingly be denied.

## FACTUAL ALLEGATIONS

### A.    TCB's Long-Standing Lending Relationship With RMF And Ginnie Mae

The reverse mortgage loan industry serves a crucial role in the economy by offering senior citizens an affordable means to supplement their incomes and/or retire comfortably while remaining in their homes.  ECF No. 1 ¶ 19.  Under a reverse mortgage, a borrower can withdraw unencumbered equity in their home in the form of a lump sum payment, a line of credit, periodic payments (akin to an annuity), or a combination of the three.  *Id*.  Home Equity Conversion Mortgage ("HECM") loans are reverse mortgages that are insured by the U.S. federal government, and available only through FHA-approved lenders.  *Id*. ¶ 20.  In 2007, Ginnie Mae created a program to allow HECM lenders to issue securities backed by HECM loans.  *Id.* ¶ 22.  After a

HECM loan is securitized, additional amounts are often added to the balance of that loan and those additional amounts are known as "tails." *Id*. ¶ 24.

RMF was a government-approved originator and servicer of HECM loans, a government-approved issuer and servicer of HECM mortgage-backed securities ("HMBS"), and an issuer of tail securitizations. *Id*. ¶ 25. By statute, Ginnie Mae may "provide by contract with the issuer for the extinguishment, upon default by the issuer, of any redemption, equitable, legal, or other right, title, or interest of the issuer in any mortgage or mortgages constituting the trust or pool against which the guaranteed securities are issued." 12 U.S.C. § 1721(g)(1).

Beginning in 2015, TCB provided financing to RMF to enable RMF to fund and operate its business — including funding for RMF's operations involving tails. ECF No. 1 ¶ 29. Ginnie Mae was involved in and expressly consented to various transactions between TCB and RMF. *Id.* ¶ 32. Ginnie Mae also contracted with other RMF lenders, including Leadenhall Life Insurance Linked Investments Fund PLC ("LCP"). *Id.* ¶ 33. But *Ginnie Mae has never sought to contract with TCB itself* regarding TCB's transactions with RMF. *Id. ¶ 32*.

### B.      Ginnie Mae Induced TCB To Lend To The Bankrupt RMF

RMF filed for bankruptcy on November 30, 2022. *Id.* ¶ 38. Shortly thereafter, RMF failed to fund payments that were due to reverse mortgage borrowers. *Id*. ¶ 39. Ginnie Mae was deeply concerned about the impact of these non-payments on senior-citizen borrowers. *Id.* ¶ 40. Ginnie Mae accordingly implored TCB to lend money to RMF. But TCB was hesitant to lend money to a bankrupt company. *Id*. ¶ 42. Specifically, TCB was concerned that if Ginnie Mae seized RMF's mortgage-servicing rights ("MSRs"), TCB would face delays in being repaid. *Id*.

Ultimately, the most senior representatives of Ginnie Mae and FHA provided commitments to TCB that the Government would provide TCB with adequate support to ensure TCB was repaid if the Government seized RMF's MSRs. *Id*. ¶ 43. As attested in the sworn declaration of TCB's

President of Mortgage Finance, which is appended to the Complaint (the "Simm Affidavit"), Ginnie Mae President Alanna McCargo assured TCB that it "would be able to look to the Collateral [i.e., the tails] for repayment even if Ginnie Mae were to seize RMF's MSRs."  ECF No. 1 Ex. A ¶ 5.  TCB received similar assurances from FHA Commissioner Julia Gordon and Executive Vice President and Chief Operating Officer of Ginnie Mae, Sam Valverde.  *Id.* ¶ 6.  TCB lent RMF millions of dollars in reliance on those assurances.  ECF No. 1 ¶ 48.  The bankruptcy court approved these loans (hereinafter, "DIP Financing"), pursuant to which TCB was granted "first priority valid, perfected, enforceable and unavoidable liens on, and security interests" in the tails. *Id.* ¶ 50.  Starting on December 9, 2022 — one day after the Bankruptcy Court had approved the DIP Financing on an interim basis — and continuing through December 15, 2022, TCB advanced more than $28 million in DIP financing to allow RMF to fund payments to the senior-citizen borrowers.  *Id.* ¶ 52.  TCB made these loans based on its first-priority, perfected lien on the tails and assurances by Ginnie Mae and FHA that they would assist in monetizing and securitizing those tails to ensure repayment to TCB.  *Id.*

### C.    After Inducing TCB To Lend To The Bankrupt RMF, Ginnie Mae Purported To Extinguish TCB's Lien

In late December 2022, less than a week after TCB had disbursed the DIP Financing to RMF, Ginnie Mae declared RMF in default and extinguished RMF's rights in the pooled mortgages, including RMF's mortgage servicing rights.  *Id.* ¶ 53.  Ginnie Mae issued a press release within days to assure senior-citizen borrowers that their payments would continue unaffected by RMF's default and Ginnie Mae's actions.  *Id.* ¶ 54.  Ginnie Mae would not have been able to make those statements to borrowers without TCB's DIP financing.  *Id.*

At the time Ginnie Mae extinguished RMF's rights, Ginnie Mae did not indicate or otherwise suggest to anyone that its actions as to *RMF's servicing rights* had impacted or

extinguished *TCB*'s separate first-priority, perfected lien on the tails.  *Id.* ¶ 55.  Nor did Ginnie Mae say anything to that effect in the ensuing weeks or months, despite meeting with TCB multiple times in person and by phone, including on January 9, 10, and 27, 2023.  *Id.* ¶ 58.  Indeed, the Complaint alleges that at the time it seized RMF's MSRs in December 2022, and at the time of the foregoing meetings in January 2023, Ginnie Mae did not believe that its seizure of RMF's MSRs had resulted in an extinguishment of TCB's lien on the tails.  *Id.*

But months later, on March 9, 2023, Ginnie Mae suddenly and without warning expressed the startling position that its seizure of *RMF's servicing rights in certain mortgages* months earlier had, unbeknownst to anyone at the time, resulted in the extinguishment of *TCB's security interest in the tails*.  *Id.* ¶ 59.  No one had previously communicated such a position.  *Id.* ¶ 62.  Thus, despite having provided RMF with more than $28 million at Ginnie Mae's request and based on Ginnie Mae's assurance of protection — all in order to rescue a politically-important mortgage program and the senior citizens that program serves — the Government's position was that TCB had been left with nothing.  It was apparent that senior federal officials at the FHA disagreed with the agency's remarkable and reliance-shattering about-face.  Indeed, as attested in the Simm Affidavit, FHA Commissioner Julia Gordon expressly stated during a conference call that the FHA disagreed with Ginnie Mae's position.  ECF No. 1 Ex. A ¶ 10.

TCB repeatedly reached out to the Government in an effort to resolve the foregoing issues without the need for litigation, but the Government summarily rejected all of those efforts and refused even to schedule a meeting to discuss them.  ECF No. 1 ¶¶ 77–80.  TCB was thus left with no alternative but to file this action.  The Complaint asserts three causes of action: (a) a claim for violation of the APA, (b) a claim for promissory estoppel, and (c) a claim for tortious interference with property rights.

## LEGAL STANDARDS

A Rule 12(b)(6) motion "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quotation omitted). A court ruling on such a motion must "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021). Dismissing a complaint "under Rule 12(b)(6) is not appropriate unless the plaintiff's pleadings on their face show, beyond a doubt, that the plaintiff cannot prove any set of facts sufficient to entitle him to relief." *Motient Corp. v. Dondero*, 529 F.3d 532, 535 (5th Cir. 2008).

Because sovereign immunity is "jurisdictional in nature," it may be resolved on a Rule 12(b)(1) motion. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("[C]laims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice."). When analyzing such a motion, a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

## ARGUMENT

## I.   THE APA CLAIM IS PROPERLY PLED

The Government falls short of showing that TCB's APA claim should be dismissed. The Government devotes most of its attention to establishing that Ginnie Mae had authority to extinguish *RMF's mortgage-servicing rights* pursuant to Ginnie Mae's contract with RMF. But that is not the question in this case. The question is instead whether Ginnie Mae had authority to extinguish TCB's rights in the tails. It did not, for multiple independent reasons. The governing statute authorizes Ginnie Mae to extinguish the rights of mortgage "issuers," 12 U.S.C. § 1721(g)(1), but TCB is not an issuer. The statute authorizes Ginnie Mae to extinguish interests

in "mortgages," *id.*, but this case is specifically about tails, which are not mortgages. And the statute authorizes Ginnie Mae to provide for extinguishment "by contract," *id.*, but Ginnie Mae and TCB had no such contract. Ginnie Mae's own cited documents recognize those limitations, which underscores the absence of authority for the agency's collateral grab. On top of that, Ginnie Mae's most senior personnel committed *not* to extinguish TCB's rights — only to reverse course without acknowledgment, explanation, or consideration of TCB's reliance interests, all of which are hallmarks of an APA violation.[1] Finally, and at the very least, there are significant factual disputes that render dismissal on the face of the Complaint improper.

### A. The Complaint States An APA Claim Based On Ginnie Mae's Lack Of Statutory Authority To Extinguish TCB's Lien

#### 1. The Government Misreads The Statutory Language

"[A]gencies, as mere creatures of statute, must point to explicit Congressional authority justifying their decisions." *Clean Water Action v. EPA*, 936 F.3d 308, 313 n.10 (5th Cir. 2019); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power . . . is limited to the authority delegated by Congress."). Enforcing that principle, the APA "allows courts to set aside agency action found to be, among other things, 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" *VanDerStok v. Garland*, 86 F.4th 179, 187–88 (5th Cir. 2023) (quoting 5 U.S.C. § 706(2)(C)); *Texas v. Becerra*, 575 F. Supp. 3d 701, 714–17 (N.D. Tex. 2021) (Kacsmaryk, J.) (holding government agency likely exceeded its statutory authority under the APA).

Here, the only statutory authority asserted by Ginnie Mae comes from 12 U.S.C. § 1721(g)(1), which allows Ginnie Mae to "provide *by contract*" for the extinguishment of any

---

[1]   The Government does not dispute that Ginnie Mae's extinguishment of TCB's rights to tens of millions of dollars in tail collateral constitutes a final agency action reviewable under the APA. ECF No. 1 ¶¶ 86-87; 5 U.S.C. § 704.

"right, title, or interest *of the issuer*" in "*any mortgage or mortgages* constituting the trust or pool against which the guaranteed securities are issued." (emphases added). The implementing regulation confirms in essentially identical language that Ginnie Mae may "extinguish all the right, title, or other interest of the issuer in the pooled mortgages." 24 C.F.R. § 320.15(b)(2). But neither the statute nor the regulation suggests that Ginnie Mae may extinguish (1) the rights of a non-issuer (such as TCB), (2) in property interests that are separate and distinct from the "pooled mortgages" (such as tails), and (3) without a contract (which Ginnie Mae did not have with TCB).

*First*, TCB is not an "issuer" as contemplated by the statute or the implementing regulation. 12 U.S.C. § 1721(g)(1); 24 C.F.R. § 320.15(b). The statute describes an issuer as an entity that (1) is approved by Ginnie Mae, and (2) pays a reasonable fee to Ginnie Mae for a guaranty. 12 U.S.C. § 1721(g)(1). TCB is no such thing. TCB is a lender to an approved issuer (RMF), not an approved issuer itself or an entity that pays a fee to Ginnie Mae for a guaranty. So, by the plain terms of the statute and regulation, Ginnie Mae's extinguishment powers do not apply to TCB.

*Second*, tails are a separate and distinct asset from pooled "mortgages" referenced in the statute and regulation. 12 U.S.C. § 1721(g)(1); 24 C.F.R. § 320.15(b). Although the Government conflates "pooled mortgages" and tails, *see* ECF No. 30-1 at 7–9, only the former are covered by Ginnie Mae's extinguishment authority. Under 12 U.S.C. § 1721(g)(1), as implemented in 24 C.F.R. § 320.15(b), Ginnie Mae can extinguish an issuer's rights in "any mortgage or mortgages constituting the trust or pool" — in other words, "pooled mortgages." HECM loans are a type of reverse mortgage that are often securitized. ECF No. 1 ¶¶ 20–21. Ginnie Mae guarantees approved mortgage-backed securities that are backed by *pools of balances* related to HECM loans. *Id*. ¶ 23. By contrast, tails are the result of additional amounts (*e.g.*, additional draws from the borrower, accruals of interest, mortgage insurance premiums, and other fees) that are added to the balance of

HECM loans *after* the HECM loans are securitized and pooled. *Compare* ECF No. 30-1 at 10 *with* ECF No. 1 ¶ 24. Importantly, tails are not "part of the HECM" guaranteed by Ginnie Mae. ECF No. 1 ¶ 5. Instead, they are participations in the HECM loans, representing the right to be paid back from proceeds on the HECM loans that have not yet been securitized or pooled. The participations are assets themselves, independent of any HECM loans. In short, tails are not a part of the underlying mortgage pool guaranteed by Ginnie Mae and therefore are not subject to Ginnie Mae's extinguishment authority.

*Third*, even if it had the statutory authority to do so (it does not), Ginnie Mae did not "provide by contract" to extinguish TCB's interests in the tails. 12 U.S.C. § 1721(g)(1). The Government concedes as much in its Motion, where it acknowledges that "privity of contract does not exist between TCB and [Ginnie Mae]." ECF No. 30-1 at 19. Ginnie Mae, moreover, knows how to include an extinguishment right in a contract when it wants to do so. For example, in 2018, Ginnie Mae entered into an acknowledgment agreement ("Acknowledgment Agreement") with RMF lender LCP and RMF. In the Acknowledgment Agreement, LCP expressly agreed that "if Ginnie Mae extinguished RMF's interest in the Pooled Mortgages, then LCP's lien also 'instantly and automatically will be extinguished as well.'" ECF No. 1 ¶ 35 (citing Acknowledgment Agreement § 3(b)). Unlike LCP, which consented by contract to its rights being extinguished by Ginnie Mae upon default by RMF, TCB did no such thing. Nor did Ginnie Mae ask TCB to sign any similar agreements that would have provided for the extinguishment of TCB's rights.

At bottom, Ginnie Mae's position is striking and alarming. It purports to allow the government to simply seize more than $28 million of TCB's collateral — after inducing TCB to lend $28 million to protect a politically important program — even though TCB did not break any promise to Ginnie Mae, default on any payment, or do anything else to forfeit its interest in the

collateral (and even though Ginnie Mae induced TCB to extend the financing with assurances that its interests would be protected).  Reading the statute to condone that jarring result would not only contradict the ordinary meaning of the text but raise serious constitutional questions, which is all the more reason to read the statute in accordance with its plain language.  *See United States v. Sec. Indus. Bank*, 459 U.S. 70, 82 (1982) (invoking the doctrine of constitutional avoidance to reject a proposed interpretation of a statute that might have resulted in a Takings Clause violation).  That is likely why other leading federal officials — including a commissioner speaking on behalf of the FHA — expressly stated that they disagreed with Ginnie Mae's unprecedented position.  ECF No. 1 ¶ 10.  At the very least, those serious constitutional concerns and the express disagreement within the Executive Branch weigh strongly against accepting Ginnie Mae's position at the motion to dismiss stage of this litigation.[2]

## 2.      The Government Misunderstands TCB's Property Rights

The Government devotes much of its APA argument to defending the premise that Ginnie Mae had statutory authority to extinguish *RMF's mortgage-servicing rights* based on the *agency's contracts with RMF or other RMF lenders who expressly agreed to extinguishment of their rights*.  But as just explained, that is not the issue here.  The Government's much more limited effort to defend its authority to extinguish *TCB's interests in the tails* in the conceded *absence of any contract between Ginnie Mae and TCB* falls far short.

---

[2]  Contrary to the Government's suggestion, *see* ECF No. 30-1 at 21–23, TCB did not assert a takings claim under the APA.  TCB recognizes that such a claim would be properly brought in the Court of Federal Claims under the Tucker Act.  *See id.*  TCB's argument here is instead that the Court in construing the scope of Ginnie Mae's statutory authority — a central aspect of an APA claim — may take account of the constitutional implications of interpreting the statute to permit the result that Ginnie Mae urges.  *See, e.g.*, *Rust v. Sullivan*, 500 U.S. 173, 191 (1991) ("[A] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." (quotation omitted)).

As an initial matter, much of the Government's argument regarding its purported authority to extinguish TCB's assets amounts to the *ipse dixit* assertion that its extinguishment rights as to RMF "necessarily" included the power to extinguish TCB's interests in the tails as well.  ECF No. 30-1 at 6, 10, 11, 13.  But repeating that assertion does not make it any less an *ipse dixit* or any more persuasive.

(a)      TCB Has Separate, Protectable Property Rights In The Tails

The Government argues that when RMF granted a lien to TCB, that lien must have "carried the same limitations" as those carried by RMF (i.e., Ginnie Mae's extinguishment rights).  Doc 30-1 at 14.  This ignores that RMF granted a lien to TCB, with Ginnie Mae's consent (*see infra* Section I.A.2.b), and thus conveyed separate and protectable property rights in the tails to TCB.  "[A] lienholder possesses a legally protected property interest."  *See Sec. State Bank & Tr. v. Bexar Cnty.*, 397 S.W.3d 715, 721 (Tex. App.–San Antonio 2012, no pet.), *abrogated on other grounds by Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180 (Tex. 2022); *see also John Deloach Enters., Inc. v. Telhio Credit Union, Inc*., 582 S.W.3d 590, 596 (Tex. App.–San Antonio 2019, no pet.) ("[A] first lienholder generally has sufficient interest in the property to sue a third party for conversion.").  Moreover, as several courts have held, "while a debtor's rights in collateral may be voluntarily or involuntarily transferred, including by way of levy . . . such transfer would still be subject to a perfected security interest."  *Shaw Mudge & Co. v. Sher-Mart Mfg. Co., Inc.*, 334 A.2d 357, 360 (N.J. App. Div. 1975); *see also* Tex. Bus. & Com. Code Ann. § 9.315 (providing that "security interest . . . continues in collateral notwithstanding . . . disposition thereof unless the secured party authorized the disposition free of the security interest").  In short, contrary to the Government's position, TCB continues to have a legally protected property interest in its lien on the tails — irrespective of the Government's involuntary transfer of RMF's rights.

11

Accordingly, the Government fails to support its conclusory assertion that TCB's property interests were somehow automatically subject to Ginnie Mae's rights to extinguish RMF's property interests. The Government cites authority for the simple proposition that when property *subject to a lien* is transferred, the property in the hands of the transferee remains subject to the lien. *See* ECF No. 30-1 at 13 (citing *W. Nat. Bank v. United States*, 8 F.3d 253, 255 (5th Cir. 1993) (quoting *United States v. Bess*, 357 U.S. 51, 57 (1958))). Here, however, Ginnie Mae is not asserting (nor could it) that it had a lien on the tails (or any of RMF's property for that matter). Indeed, if anything, this case supports TCB, not the Government, because it demonstrates that when Ginnie Mae purported to seize RMF's property, to the extent the tails were implicated in that seizure, Ginnie Mae did so subject to TCB's perfected lien. *See Shaw Mudge & Co.*, 334 A.2d at 360.

The Government also cites authority for the proposition that when a party assumes a contract, it assumes all of the provisions thereof not just those provisions that it likes. *See* ECF No. 30-1 at 13 (citing *Anytime Fitness, LLC v. Thornhill Bros. Fitness LLC*, 85 F.4th 321, 326 (5th Cir. 2023)). This is similarly inapposite. TCB did not step into the shoes of RMF as a contractual counterparty to Ginnie Mae or assume RMF's agreement with Ginnie Mae. Rather, TCB is RMF's secured lender, with its own protectable property interest in the tails. The Government offers no basis for its argument that it can take that protectable property interest for itself.

At a minimum, the nature of TCB's property interest is a factual dispute which cannot be resolved on the face of the Complaint. A motion to dismiss for failure to state an APA claim should be denied where plaintiff has stated sufficient facts or where plaintiff's claims cannot be resolved without development of the factual record. *See Neese v. Becerra*, 2022 WL 1265925, at *11–15 (N.D. Tex. Apr. 26, 2022) (Kacsmaryk, J.) (denying 12(b)(6) on APA claim where

plaintiffs "allege facts sufficient to survive Rule 12(b)(6) dismissal"); *see also Kovac v. Wray*, 363 F. Supp. 3d 721, 759 (N.D. Tex. 2019) ("As with Plaintiffs' due process claims, Plaintiffs' APA claims cannot be resolved at the motion-to-dismiss stage without development of the factual record.").

> (b)   Ginnie Mae Consented To RMF's Transfer Of Property Rights To TCB

The Government contends that RMF "could not somehow unilaterally" shed Ginnie Mae's extinguishment rights by conveying RMF's interests to TCB. ECF No. 30-1 at 14. But that is not what happened here. Ginnie Mae consented to RMF's transfer of rights in the tails to TCB not once, but twice. ECF No. 1 Section V. It was thus made explicit, and clear to all involved (including Ginnie Mae), that TCB's interest in the tails was distinct from RMF's interests in the MSRs and pooled mortgages and, as described above (*supra* p. 9), Ginnie Mae treated those interests differently. ECF No. 1 ¶¶ 23–24.

In 2018, RMF and TCB entered into an agreement governing TCB's interest in RMF's tails (as amended and restated, the "Tail Agreement").[3] At that time, Ginnie Mae was heavily involved with and consented to the transaction between TCB and RMF, including TCB's first–priority lien on the tails. ECF No. 1 ¶ 32. Neither then, nor at any other time, did Ginnie Mae seek to execute any agreement with TCB related to the tails or to any supposed right of Ginnie Mae to extinguish TCB's priority lien upon the tails. This stands in stark contrast to Ginnie Mae's interactions with RMF's other lenders. Ginnie Mae required those other lenders to execute contemporaneous agreements that expressly extinguished their liens upon an exercise of Ginnie Mae's

---

[3]   In 2021, TCB and RMF entered into a Fifth Amended and Restated Loan and Security Agreement (Tail Agreement).

extinguishment rights against RMF. *See supra* p. 9; ECF No. 1 ¶¶ 33–35. The Government ignores this fact entirely.

More recently, in December 2022, Ginnie Mae consented to RMF's transfer of rights to TCB in connection with TCB's DIP financing. Pursuant to the DIP Financing, TCB was granted a first-priority valid, perfected, enforceable, and unavoidable lien on and security interest in the existing tail collateral. *See* ECF No. 1 ¶ 50 (citing Ex. A Final DIP Order at 23, ¶ 8(b)). In the Final DIP Order, Ginnie Mae negotiated for a reservation of rights related to any contract, guaranty agreement, or various other agreements, between Ginnie Mae and, either individually or together, RMF, LCP, Longbridge Financial, and/or the FHA. ECF No. 1 ¶ 51 (citing Ex. A Final DIP Order at 73, ¶ 56 (a)). Notably, Ginnie Mae's reservation of rights did not include any mention of TCB or tails. ECF No. 1 ¶ 51. Instead, Ginnie Mae's reservation of rights included only the "mortgage servicing rights associated with mortgages or participations that are backed or are otherwise associated with securities guaranteed by Ginnie Mae." *Id*. Ginnie Mae is a sophisticated party — if Ginnie Mae had intended to include a reservation of rights as to the tails, it would have done so — particularly given the fact that TCB's interest in the tails was explicitly recognized by the Final DIP Order. ECF No. 1 ¶ 50 (citing Ex. A Final DIP Order at 23, ¶ 8(b)).[4]

---

[4]   The Government's contends that the bankruptcy court could not limit Ginnie Mae's extinguishment rights. *See* ECF No. 30-1 at 20. TCB is not contending, however, that the bankruptcy court's Final DIP Order did so. The Final DIP Order did not modify, impact, or affect any of the prior agreements entered into by Ginnie Mae, RMF, or any other party because the prior agreements did not allow Ginnie Mae to extinguish TCB's rights. Moreover, the Bankruptcy Court did not preclude or limit any ability of Ginnie Mae to contract with *RMF*, did not preclude or limit Ginnie Mae's ability to enforce its contract with *RMF*, and did not preclude or limit Ginnie Mae's ownership rights as to the *pooled mortgages*. Accordingly, the bankruptcy court did not impinge on Ginnie Mae's rights through its issuance of the Final DIP Order. The Government's argument that the claim must be asserted in the bankruptcy court is misguided because this action is not seeking to hold Ginnie Mae in contempt of any order. Doc 30-1 at 20–21. In any event, the bankruptcy court retained jurisdiction in connection with the DIP Order, but not exclusive jurisdiction. *See* Ex. A Final DIP Order ¶ 84.

At a minimum, whether Ginnie Mae consented to RMF's transfer of rights is a factual dispute which cannot be resolved on the face of the Complaint. *See Neese*, 2022 WL 1265925, at *11–15; *see also Kovac*, 363 F. Supp. 3d at 759. At bottom, TCB's claims cannot be resolved at this stage without further development of the factual record as to Ginnie Mae's consent for the transference of rights to TCB.

   (c) The Government Cannot Point To Any Other Authority For Ginnie Mae To Extinguish TCB's Property Rights

Contrary to the Government's assertions, nothing in the Ginnie Mae Guide or Ginnie Mae Guaranty Agreement provides Ginnie Mae with such authority. The Government asserts that Chapter 23 of the Ginnie Mae Guide gives Ginnie Mae authority to extinguish the rights of anyone claiming through the Issuer. *See* ECF No. 30-1 at 16. But the extinguishment clause in Chapter 23 is not the operative provision at issue here. The operative provision is instead in Chapter 35 of the Ginnie Mae Guide which specifically applies to HECM loans and contains its own extinguishment clause. It is axiomatic that the Court should look to that more specific provision, rather than the general provision found in Chapter 23. *See United States v. Bell*, 2022 WL 17729413, *5 (5th Cir. Dec. 16, 2022) (per curiam) ("[S]pecific terms and exact terms are given greater weight than general language" (quoting Restatement (Second) Of Contracts § 203(c))). The extinguishment clause in Chapter 35, which postdates Chapter 23, applies to *Issuers* only. *See* Guide, Ch. 35, Part 3, Sec. F; ECF No. 30-2 at 34 ("If Ginnie Mae declares a default and extinguishment under the applicable Guaranty Agreement, *the Issuer* forfeits and waives any and all rights to reimbursement or recovery of any of its own funds used to satisfy the obligations of the HECM mortgagor, including expenditures or accruals related to the pooled Participations." (emphasis added)).

Moreover, Chapter 35 of the Guide explicitly states, "The descriptions found in MBS Guide, Ch. 23 addressing the grounds for declaring an Issuer default and the remedies available to Ginnie Mae against Issuers, document custodians, subcontractors, and other persons apply to HMBS pools, *except as modified in the HMBS Guaranty Agreement, Appendix III-27.*" *See* Guide, Chap. 35, Part 16; ECF No. 30-2 at 53.  As further explained below, the extinguishment clause in the HMBS Guaranty Agreement applies *only to Issuers* and does not contemplate extinguishing the rights of third parties.  *See* HMBS Guar. Agmt. ("Guaranty Agreement"), Sec. 10.04; ECF No. 30-2 at 20.

The Government also argues that the Guaranty Agreement supports its position.  Doc 30-1 at 11–12.  But TCB is not a party to the Guaranty Agreement or, as noted above, any other contract with Ginnie Mae.  Nor is TCB an "Issuer" bound by and to the Guaranty Agreement for the reasons explained *supra* Part I.  *See* Guaranty Agreement at 1; *see* ECF No. 30-2 at 4.  And the Extinguishment Clause in Section 10.04 of the Guaranty Agreement allows Ginnie Mae to extinguish the rights, title, or interests of Issuers only.  Guaranty Agreement, Section 10.04; ECF No. 30-2 at 20.  Moreover, Section 3.08 of the Guaranty Agreement confirms that RMF, as the Issuer, can transfer certain of its rights to a third-party *with* Ginnie Mae's consent.  *See* Guaranty Agreement, Section 3.08; ECF No. 30-2 at 11.  As described above, that is precisely what happened here.[5]

---

[5]   As a further point of clarification, the Government is also incorrect to suggest that TCB is attempting to bring an APA claim based on a breach of contract theory.  *See* ECF No. 30-1 at 17–19 (citing 28 U.S.C. § 1491(a)).  TCB references the Guaranty Agreement as background because that agreement is directly relevant to determining the extent of Ginnie Mae's statutory authority in this case.

**B.     The Complaint States An APA Claim Based On Ginnie Mae's Arbitrary And Capricious Actions**

In addition to providing for a court to set aside an agency action that exceeds the agency's statutory authority, the APA also provides for a court to set aside an agency action that lacks reason.  Ginnie Mae acted arbitrarily and capriciously when it extinguished TCB's interest in the tails without notice to TCB and after Ginnie Mae had provided TCB with assurances that it would not take such action.  *See* 5 U.S.C. § 706(2)(A).

Claims pled under § 706(2) include a broad swath of agency misconduct.  Specifically, § 706(2) includes "a catchall[] picking up administrative misconduct not covered by the other more specific paragraphs" of the APA — colloquially referred to as an "arbitrary-and-capricious" claim.  *See Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. Of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984) (Scalia, J.).  "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  "[A]gency action is lawful only if it rests 'on a consideration of the relevant factors'" and the "important aspect[s] of the problem."  *Michigan v. EPA*, 576 U.S. 743, 750, 752 (2015) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  "Put simply, [courts] must set aside any action premised on reasoning that fails to account for 'relevant factors' or evinces 'a clear error of judgment.'"  *Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*, 985 F.3d 472, 475 (5th Cir. 2021) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)).  Ginnie Mae's actions here were arbitrary and capricious for two independent reasons.

*First*, Ginnie Mae has wholly failed to provide a reasoned analysis for its abrupt departure from its previous course of conduct.  At a minimum, "[w]hen an agency changes its existing position, it . . . must at least display awareness that it is changing position and show that there are

17

good reasons for the new policy." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (quotation omitted); *see also Greater Bos. Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970) ("[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from the tolerably terse to the intolerably mute.").  Here, Ginnie Mae took the position in December 2022 that TCB would have rights in the tail collateral, regardless of whether Ginnie Mae extinguished RMF's rights.  ECF No. 1 ¶¶ 42–48.  Ginnie Mae made no mention of a change in that position in connection with the press release it issued in late December following its seizure of RMF's MSRs.  Nor did Ginnie Mae mention a change in that position during multiple meetings with TCB in January 2023.  Indeed, the Complaint alleges that Ginnie Mae continued to believe in its original position during that period.  *Id.* ¶ 58.  It was only months later, on March 9, 2023, that Ginnie Mae then "swerv[ed]" to its new position that TCB's interest in the collateral had been extinguished months before.  ECF No. 1 ¶¶ 59, 62.  Ginnie Mae has never articulated a "reasoned analysis" (or any analysis for that matter) in support of its about-face.  This is particularly noteworthy given FHA's express disagreement with Ginnie Mae's position.  ECF No. 1 ¶ 10.

    ***Second***, Ginnie Mae ignored TCB's reliance interests.  Under well-established administrative law principles, the Court must consider Ginnie Mae's representations to TCB when determining whether Ginnie Mae acted in an arbitrary and capricious manner.  *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (it is arbitrary and capricious for agency to fail to provide a "detailed justification" for a policy change "when its prior policy has engendered serious reliance interests"); *Wages & White Lion Invests., LLC*, 90 F.4th at 384–85.  Here, Ginnie Mae failed to consider TCB's reliance interests before it extinguished TCB's rights in the tails.

Ginnie Mae's top officials, including Ginnie Mae's president, repeatedly assured TCB that its first priority secured lien in the tails would be protected in order to induce TCB into loaning money to RMF, so as to allow RMF to remain operational during its bankruptcy proceeding.  ECF No. 1 ¶¶ 42–46.  As sworn to by Mr. Simm, "President McCargo assured [TCB] that TCB would be able to look to the Collateral for repayment even if Ginnie Mae were to seize RMF's MSRs."  ECF No. 1 ¶ 46.  Ginnie Mae's assurances engendered TCB's reasonable reliance interests — indeed, they were intended to do just that.  The APA "prohibits administrative agencies from saying one thing, pulling a surprise switcheroo, and ignoring the reasonable reliance interests engendered by its previous statements."  *Wages & White Lion Invests., LLC*, 90 F.4th at 386.  Yet that is exactly what Ginnie Mae is attempting to do here via its drastic and consequential about-face.[6]

## II.    THE STATE LAW CLAIMS ARE PROPERLY PLED AND NOT BARRED

TCB's state law claims for promissory estoppel and tortious interference with property rights are properly pled and not barred by sovereign immunity.

---

[6]    Not only did Ginnie Mae carry out a drastic and consequential about-face by reversing its position as to TCB's rights, the FHA failed to fulfill its long-standing obligation to make "any payments that are not paid timely to Borrowers due to the Mortgagee defaulting on their Borrower payment obligation."  ECF No. 1 ¶ 49 (citing FHA Ltr. July 11, 2023 *available at* https://www.hud.gov/sites/dfiles/OCHCO/documents/2023-15hsgml.pdf at 2).   Under 24 C.F.R. § 206.121(a), "[i]f the Commissioner determines that the mortgagee is unable or unwilling to make all payments required under the mortgage, including late charges, the Commissioner shall pay such payments and late charges to the borrower."  24 C.F.R. § 206.121(a) (effective as of December 22, 2022).   When HUD's agency Ginnie Mae determined RMF was in default, it was HUD's obligation to fund any borrowers' payments due.  HUD inexplicably failed to fund those payments in breach of its clear legal obligation to do so.

A.        **Sovereign Immunity Does Not Bar TCB's State Law Claims**

"The FTCA provides a limited waiver of sovereign immunity for certain tortious government conduct." *Joiner v. United States*, 955 F.3d 399, 403 (5th Cir. 2020). TCB pleaded that this Court has jurisdiction over its state law claims under the FTCA. *See* ECF No. 1 ¶ 16.

"Several exceptions . . . limit the [FTCA's] waiver of sovereign immunity." *Gibson v. United States*, 809 F.3d 807, 811 (5th Cir. 2016). Through the FTCA's exceptions, the Government in effect reasserts sovereign immunity against claims that fall within the FTCA's exceptions. In the FTCA context, plaintiffs bear the burden to allege "a claim that is *facially* outside of the [FTCA's] exception[s]" but a plaintiff need not "plead around" the FTCA in its complaint. *Id.* at 811 n.1 (emphasis added) (quoting *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009)); *see also Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023) ("[S]overeign immunity is an affirmative defense, and plaintiffs are not required to anticipate or plead around affirmative defenses.").

Importantly, the FTCA's exceptions are not construed broadly in favor of the sovereign because "'unduly generous interpretations of the exceptions [to the FTCA] run the risk of defeating the central purpose' of the FTCA." *Joiner*, 955 F.3d at 404 (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491–92 (2006)). Instead, an FTCA exception should be construed "to identify those circumstances which are within the words and reason of the exception — no less and no more." *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984) (quotation omitted). Neither the FTCA's misrepresentation exception nor the FTCA's contract rights exception apply to TCB's promissory estoppel claim, or to TCB's tortious interference claim, respectively.

The Government first argues that sovereign immunity bars TCB's promissory estoppel claim because the FTCA's misrepresentation exception applies. ECF No. 30-1 at 25. The FTCA's misrepresentation exception does not apply where the "misrepresentation" is not the "focal point

of the claim" but rather is "merely collateral to" the claim.  *See Life Partners Inc. v. United States*, 650 F.3d 1026, 1031–32 (5th Cir. 2011) (quotation omitted).

Here, as alleged, on December 9, 2023, Ginnie Mae's most senior representatives — including President McCargo — assured TCB that Ginnie Mae would "provide adequate support for TCB's ability to monetize the financed Tails in the event of [Ginnie Mae's] seizure of" RMF's MSRs.  ECF No. 1 ¶¶ 43, 46 ("President McCargo assured [TCB] that TCB would be able to look to the Collateral for repayment even if Ginnie Mae were to seize RMF's MSRs.").  TCB is not asserting that those statements were misrepresentations; quite the contrary, TCB's position is that the assurances were genuine when made.  *See id.* ¶ 58 ("[A]t the time it seized RMF's MSRs in December 2022, and at the time of . . . meetings in January 2023, Ginnie Mae did not believe that its seizure of RMF's MSRs had resulted in an extinguishment of TCB's lien on the Tails.").  It was the about-face three months later that was the problem.  That is, at the time Ginnie Mae made the assurances to TCB, Ginnie Mae *meant* what it said, and only later did it reverse course on those assurances *after* TCB had already acted in substantial reliance on them.  In short, TCB has alleged that Ginnie Mae changed its position rather than engaged in misrepresentation.  As such, TCB's promissory estoppel claim is not one where "the focal point of the claim" is a misrepresentation.  *See Life Partners Inc.*, 650 F.3d at 1031.[7]

The Government next argues that sovereign immunity bars TCB's tortious interference with *property rights* claim because, in the Government's view, the FTCA excepts claims for tortious interference with *contract rights*.  ECF No. 30-1 at 28–29.  That argument fails for the simple reason that TCB has not asserted a claim for tortious interference with contract rights.  The

---

[7]   Because there was no misrepresentation, part one of the two-part test articulated in *Life Partners* is not met here, and thus, there is no need for the Court to reach the second part of the test.

claim is for tortious interference with property rights, which is a distinct cause of action under Texas law.  *See infra* Section II.C; ECF No. 30-1 at 29 (Government's memorandum of law, asserting without explanation that all claims involving "economic property rights" should be read as claims for tortious interference with a prospective contract).  Moreover, TCB's interest is not a mere contract right (prospective or otherwise).  Instead, TCB has a first-priority valid, perfected, enforceable and unavoidable lien on the tails — *i.e.*, a protectable property interest *pursuant to the bankruptcy court's DIP financing order*.  *See* ECF No. 1 ¶ 50.  Sovereign immunity, therefore, does not bar either state law claim.

### B.      The Promissory Estoppel Claim Is Properly Pled

"Under Texas law, '[t]he requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment.'"  *MetroplexCore, LLC v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (per curiam) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)).  "While promissory estoppel is normally a defensive theory, it may serve as an independent cause of action when, as here, a plaintiff is unable to plead a successful breach-of-contract claim."  *Alvarado v. PNC Bank Nat'l Ass'n*, 660 F. Supp. 3d 612, 619 (S.D. Tex. 2023).  As Ginnie Mae acknowledges in its Motion, "privity of contract does not exist between TCB and [Ginnie Mae]."  ECF No. 30-1 at 19.  Given that there is no privity of contract between TCB and Ginnie Mae, TCB's claim for promissory estoppel is appropriate and properly pled.

The Complaint properly pleads all three elements of a promissory estoppel claim.  First, the requirement to plead a "promise" is satisfied because Ginnie Mae promised TCB that its interest in the tails would be protected.  *See* ECF No. 1 ¶¶ 5, 92.  On a December 9, 2022 conference call, top officials at Ginnie Mae, including President McCargo, repeatedly assured TCB that "TCB would be able to look to the Collateral for repayment even if [Ginnie Mae] were to seize RMF's

MSRs."  *See* ECF No. 1 Ex. A ¶ 5.  Second, the requirement to plead foreseeability is satisfied because it was not only foreseeable but indeed intended that TCB would substantially rely on Ginnie Mae's promises.  *See* ECF No. 1 ¶¶ 5, 94.  And third, the requirement to plead substantial reliance is satisfied because it was reasonable for TCB to rely on Ginnie Mae's oral promises.  In its Motion, Ginnie Mae does not dispute that the foregoing assurances were provided.  As a result of Ginnie Mae's representations and to TCB's detriment, TCB agreed to provide the bankrupt RMF entity with tens of millions of dollars of DIP financing.  *See* ECF No. 1 ¶ 48; *see also* ECF No. 1 Ex. A ¶ 7.  Months later, Ginnie Mae changed position and expressed the view that TCB's loan to RMF would not be repaid.  *See* ECF No. 1 ¶ 95.  Even FHA does not agree with Ginnie Mae's position.  *See* ECF No. 1 ¶ 63 ("FHA did not agree with the position Ginnie Mae expressed during the March 9, 2023 call."); ECF No. 1 Ex. A ¶ 10.  Thus, TCB has properly pled a promissory estoppel claim.

### C.    The TCB's Tortious Interference With Property Rights Claim Is Properly Pled

Texas law is well-settled that "[a]ny intentional invasion of, or interference with, property, property rights, personal rights or personal liberties causing injury without just cause or excuse is an actionable tort."  *Suprise v. DeKock*, 84 S.W.3d 378, 380 (Tex. App.–Corpus Christi 2002, no pet.) (quoting *King v. Acker*, 725 S.W.2d 750, 754 (Tex. App.–Houston [1st Dist.] 1987, no pet.)). Under this general rule, Texas courts have recognized a cause of action for tortious interference with the peaceful use and enjoyment of property rights, which is, "in essence, a claim for intentional invasion of, or interference with, property rights."  *See id.* at 382; *see also, e.g.*, *Robles v. Mann*, 2016 WL 1613316, at *7 (Tex. App.–Corpus Christi Apr. 21, 2016, no pet.); *Dorfman v. JPMorgan Chase Bank, N.A.*, 2018 WL 5074769, at *9 (Tex. App.–Fort Worth Oct. 18, 2018, no pet.).  The elements of tortious interference with property rights are: (1) an interference with one's

property or property rights occurred; (2) such interference was intentional and caused damage; and (3) the interference was conducted with neither just cause nor legal excuse. *See Cleveland Reg. Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 349 (Tex. App.–Beaumont 2010, pet. denied); *see also Edberg v. Laurel Canyon Ranch Architectural Rev. Comm.*, 2011 WL 541134, at \*5 (Tex. App.–San Antonio Feb. 16, 2011, pet. denied); *cf. Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 685 (Tex. App.–Houston [1st Dist.] 2016, pet. denied) (noting that the elements of a tortious interference with contract claim are (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) that the act was a proximate cause of the plaintiff's damage, and (4) that actual damage occurred).[8]

The Complaint properly alleges all three elements of a claim for tortious interference with property rights. First, the Complaint alleges that Ginnie Mae interfered with TCB's rights in the tails. *See*, *e.g*., ECF No. 1 ¶ 104. Second, the Complaint alleges that Ginnie Mae intentionally interfered with TCB's property rights by unlawfully extinguishing TCB's interest in the tails. *Id.* And third, the Complaint alleges that Ginnie Mae's position is not supported by law, statute, or contract. *Id.* ¶ 106. The claim is thus properly pled.

## CONCLUSION

For the foregoing reasons, TCB respectfully requests that the Court deny the Government's Motion to Dismiss.

---

[8]   As shown in Section II.A above, Ginnie Mae is wrong when it asserts that TCB's tortious interference with property rights claim must be recast as a tortious interference with contract claim — an entirely separate tort. *See* ECF No. 30-1 at 28. TCB is the "master of [its] complaint" and may bring its case in whatever way it chooses. *See Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 551 (5th Cir. 2008).

Date: February 21, 2024                         Respectfully submitted,

                                                /s/ *Isaac Nesser*
                                                Isaac Nesser – *Admitted Pro hac vice*

                                                isaacnesser@quinnemanuel.com
                                                Heather Christenson – *Admitted Pro hac vice*
                                                heatherchristenson@quinnemanuel.com
                                                QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                51 Madison Avenue, 22nd Floor
                                                New York, New York 10010

                                                William A. Burck – *Admitted Pro hac vice*
                                                williamburck@quinnemanuel.com
                                                Christopher G. Michel – *Admitted Pro hac vice*
                                                christophermichel@quinnemanuel.com
                                                QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                1300 I Street NW, Suite 900
                                                Washington, District of Columbia 20005–3314

                                                Matthew Scheck – *Admitted Pro hac vice*
                                                matthewscheck@quinnemanuel.com
                                                QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                300 West 6th Street, Suite 2010
                                                Austin, Texas 78701

                                                Elinor C. Sutton
                                                Texas Bar No. 24129804
                                                elinorsutton@quinnemanuel.com
                                                QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                3100 McKinnon Street, Suite 1125
                                                Dallas, Texas 75201

                                                Thomas C. Riney
                                                Texas Bar No. 16935100
                                                tom.riney@uwlaw.com
                                                C. Jason Fenton
                                                Texas Bar No. 24087505
                                                jason.fenton@uwlaw.com
                                                UNDERWOOD LAW FIRM, P.C.
                                                500 S. Taylor, Suite 1200
                                                Amarillo, Texas 79101
                                                Phone:(806) 376–5613
                                                *ATTORNEYS FOR PLAINTIFF*

25