IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| TEXAS CAPITAL BANK,<br><br>    Plaintiff,<br><br>v.<br><br>GOVERNMENT NATIONAL<br>MORTGAGE ASSOCIATION, *et al.*,<br><br>    Defendants. | 2:23-CV-156-Z |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss ("Motion") (ECF No. 30), filed January 10, 2024. Plaintiff filed its response (ECF No. 44) on February 21, 2024. Having reviewed the briefing and relevant law, the Court **GRANTS** the Motion **IN PART**.

**BACKGROUND**

Plaintiff Texas Capital Bank ("TCB") and Defendant Government National Mortgage Association ("Ginnie Mae") dispute the status of TCB's "first priority lien on tens of millions of dollars" relating to the Home Equity Conversion Mortgage ("HECM") program. ECF Nos. 1 at 1; 30-1 at 7. That program enables thousands of seniors "to retire comfortably by taking out loans against the value of their homes and receiving advance payments (or draws)" that they "use for living expenses." ECF No. 1 at 2. But on November 30, 2022, one of the Nation's largest HECM lenders — Reverse Mortgage Funding LLC ("RMF") — filed for bankruptcy. *Id.* And when RMF failed to fund draws owed to seniors, Defendants "urgently sought to identify an entity willing to loan money to RMF so that [it] could make its required payments." *Id.*

Enter Plaintiff. In short, TCB avers that Defendants induced it to lend millions to RMF, consented to its "first priority, perfected lien" on certain HECM collateral, and then declared it null.

ECF Nos. 1 at 4; 44 at 7. That declaration and seizure, per Plaintiff, (1) violated the Administrative Procedure Act ("APA") because it was in excess of statutory authority and arbitrary and capricious; (2) created "liability for promissory estoppel given the agency's stark breach" of its word; and (3) constituted "tortious interference with property rights."[1] ECF No. 44 at 7–8. Defendants respond with the instant Motion, arguing that Plaintiff's claims fail as a matter of law because, *inter alia*, Ginnie Mae "had express authority" to eliminate TCB's interests. ECF No. 30-1 at 6.

### LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the defendant is liable. *Iqbal*, 556 U.S. at 678. At this stage, the Court "accepts well-pled facts as true and views them in the light most favorable to the plaintiff." *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) (internal marks omitted).

Lastly, "[s]overeign immunity is jurisdictional in nature" and may be resolved on a Rule 12(b)(1) motion. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). When analyzing such a motion, a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

---

[1] "The lien was critically important to TCB because TCB's recourse for repayment absent the lien would be the bankrupt entity, RMF." ECF No. 1 at 3. "TCB is not in the business of making unsecured loans to bankrupt companies, and it was clear that RMF, as a bankrupt entity, did not have additional assets sufficient to make the required repayments." *Id.*

ANALYSIS

I. **Plaintiff's "excess of authority" APA claim does not fail as a matter of law.**

A. **Neither statutory nor regulatory authority forecloses Plaintiff's argument.**

The APA "allows courts to set aside agency action found to be . . . 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" *VanDerStok v. Garland*, 86 F.4th 179, 187–88 (5th Cir. 2023) (quoting 5 U.S.C. § 706(2)(C)); *Texas v. Becerra*, 575 F. Supp. 3d 701, 714 (N.D. Tex. 2021). This law is inapplicable, per Defendants, because Ginnie Mae's "extinguishment of RMF's interest in the mortgages" — an extinguishment which "caused the elimination of TCB's interest in the Tails" — was proper and lawful.[2] ECF No. 30-1 at 11; *see also id.* at 16 ("[Ginnie Mae] did not exceed its legal authority by extinguishing the interests" in the mortgages.). In their view, "the governing statute, regulations, and agreements" expressly authorized Ginnie Mae "to extinguish all interests in the HECM upon default, necessarily including" TCB's. *Id.*

The governing statute provides:

> The Association is hereby empowered, in connection with any guaranty under this subsection, whether before or after any default, to provide by contract with the issuer for the extinguishment, upon default by the issuer, of any redemption, equitable, legal, or other right, title, or interest of the issuer in any mortgage or mortgages constituting the trust or pool against which the guaranteed securities are issued; and with respect to any issue of guaranteed securities, in the event of default and pursuant otherwise to the terms of the contract, the mortgages that constitute such trust or pool shall become the absolute property of the Association subject only to the unsatisfied rights of the holders of the securities based on and backed by such trust or pool.

12 U.S.C. § 1721(g)(1).

---

[2] "After a HECM loan is securitized, additional amounts are often added to the balance of that loan. This can occur as a result of, among other things, additional draws from the borrower, accrual of interest, mortgage insurance premiums, and other fees." ECF No. 1 at 7–8. "These additional amounts are known as 'HECM Tails' or 'Tails.' Tails associated with a HECM loan are not part of the [HECM Mortgage-Backed Securities] [('HMBS')] that hold the Participation representing the underlying HECM loan." *Id.* at 8. "Instead, Tails can be pooled and securitized into separate securitizations ('Tail Securitizations')." *Id.* "Thus, a single HECM loan can have multiple Tails and Participations that are securitized into multiple HMBS and Tail Securitizations." *Id.*

The foregoing is accompanied by an implementing regulation, which provides:

> Upon any default by the issuer, the Association may: (1) Institute a claim against the issuer's insurance, bond or other coverage, as specified in Section 320.11; (2) Pursuant to section 306(g) of the National Housing Act (12 U.S.C. 1721(g)), extinguish all the right, title, or other interest of the issuer in the pooled mortgages; and (3) Exercise such other rights and remedies as it may have.

24 C.F.R. § 320.15.

Plaintiff responds that neither the statute nor the regulation suggests that Ginnie Mae may extinguish (1) "the rights of a non-issuer (such as TCB), (2) in property interests that are separate and distinct from the 'pooled mortgages' (such as tails)," and (3) "without a contract (which Ginnie Mae did not have with TCB)." ECF No. 44 at 14. But "at a minimum," it concludes, "factual disputes on critical questions," from "the nature of TCB's property interest to the commitments exchanged by the parties," preclude dismissal on the pleadings alone. *Id.* at 8. The Court agrees.

First, the statute states that extinguishment of a mortgage issuer's rights may occur *if* "provide[d] by contract . . . ." 12 U.S.C. § 1721(g)(1). But by Defendants' own admission, no such contract exists or existed between Ginnie Mae and TCB. *See* ECF No. 30-1 at 19 ("[P]rivity of contract does not exist between TCB and [Ginnie Mae] for any of the contracts referenced in the Complaint."). And Defendants entered such contracts before — just not here. *See* ECF No. 44 at 15 ("[I]n 2018, Ginnie Mae entered into an acknowledgment agreement" with "RMF lender LCP and RMF," providing that "if Ginnie Mae extinguished RMF's interest in the Pooled Mortgages, then LCP's lien also 'instantly and automatically will be extinguished as well.'"). Hence, no argument can be made that Defendants misunderstood the circumstances.

Second, the statute unambiguously provides Ginnie Mae authority to extinguish the rights of mortgage *issuers*. *See* 12 U.S.C. § 1721(g)(1) (Ginnie Mae is empowered "to provide by contract with the issuer for the extinguishment . . . of any redemption, equitable, legal, or other

right, title, or interest *of the issuer* in any mortgage or mortgages . . . .") (emphasis added). Equally unambiguous is the statutory definition *of* an issuer: (1) an entity "approved for the purposes of this subsection by [Ginnie Mae]" that (2) pays "a reasonable fee for any guaranty under this subsection" to Ginnie Mae. *Id.* And Plaintiff is — and does — neither. *See* ECF No. 44 at 14 ("TCB is a lender to an approved issuer (RMF), not an approved issuer itself or an entity that pays a fee to Ginnie Mae for a guaranty.").

Lastly, both the statute and regulation reference mortgage *pools*. *See* 12 U.S.C. § 1721(g)(1) ("[T]he mortgages that constitute such trust or pool shall become the absolute property of the Association subject only to the unsatisfied rights of the holders of the securities based on and backed by such trust or pool."); *see also* 24 C.F.R. § 320.15 ("Upon any default by the issuer, the Association may . . . extinguish all the right, title, or other interest of the issuer in the pooled mortgages . . . ."). But Plaintiff's claims concern *tails* — which, as discussed *supra* — are "the result of additional amounts . . . added to the balance of HECM loans after the HECM loans are securitized and pooled." ECF No. 44 at 14–15. In other words, tails are not mortgage pools — at least based on Plaintiff's well-pled facts, which are accepted as true at this stage. And Ginnie Mae and TCB never entered into any agreement "that the Tails constituted RMF's interests in the Pooled Mortgages or that TCB's security interest in the Tails would be extinguished upon Ginnie Mae's extinguishment of RMF's rights in the Pooled Mortgages." ECF No. 1 at 11.

In sum, Defendants argue that Ginnie Mae *necessarily* extinguished TCB's interest when it extinguished RMF's. *See* ECF No. 30-1 at 10 ("When [Ginnie Mae] extinguished RMF's interests in the HECMs, it necessarily eliminated TCB's interest in the HECMs, because TCB's interest derived wholly from RMF and the entire loan became the 'absolute property' of [Ginnie Mae] upon extinguishment."). That argument falls short — at least on the statutory text.

### B. Neither the Guide nor Guaranty Agreement forecloses Plaintiff's argument.

Defendants' next two arguments — that the HMBS Guaranty Agreement and Ginnie Mae's Guide confer authority to extinguish TCB's interest — are untenable. *See id.* at 11 ("[Ginnie Mae] 'provide[d] by contract' for this extinguishment right in its Guaranty Agreement with RMF."); *id.* at 29 ("[Ginnie Mae] had a legal right to extinguish TCB's interest in the Tails pursuant to . . . the Guide.").

First, the Guaranty Agreement. Defendants argue that Sections 10.04 and 10.05 "make plain that [Ginnie Mae] had the right to extinguish any interest the Issuer has in the Mortgages, related Ginnie Participations, or Other Interests." *Id.* at 12. Section 10.04 provides that Ginnie Mae may "automatically effect and complete the extinguishment of" any "interest of the Issuer in the Mortgages, the related Ginnie Participations and any Other Interests." ECF No. 30-2 at 20. And Section 10.05 provides that — upon extinguishment — "the Issuer shall have no further right to service the Mortgages, the Ginnie Participation pools, any Other Interests and Securities," and shall have "no right to share in the proceeds of any sale or transfer of rights or interests related to them." *Id.*

But Plaintiff is not party to the Guaranty Agreement. *See* ECF No. 30-1 at 19 ("[P]rivity of contract does not exist between TCB and [Ginnie Mae] for any of the contracts referenced in the Complaint."); *see also* ECF No. 44 at 22 ("TCB is not a party to the Guaranty Agreement . . . ."). Even if it was, Section 10.04 applies to the interests of *issuers*. *See* ECF No. 30-2 at 20 ("Ginnie Mae may . . . complete the extinguishment of any . . . interest of the *Issuer*" in the mortgages.). And as explained, TCB is not an issuer. *See supra* Part I. A.

Furthermore, Section 3.08 of the Guaranty Agreement provides:

> The Issuer hereby covenants and warrants not to transfer, assign or convey any participation interests in advances made to or on behalf of mortgagors in respect of any Mortgages and related amounts . . . to anyone other than Ginnie Mae, *without the consent of Ginnie Mae* in its sole and absolute discretion.

ECF No. 30-2 at 11 (emphasis added).

In other words, RMF had the authority to transfer its rights to a third-party — so long as Ginnie Mae consented. And pursuant to Plaintiff's pleadings, it did: "Ginnie Mae consented to RMF's transfer of rights in the Tails to TCB not once, but twice." ECF No. 44 at 19. Moreover, Ginnie Mae "treated those interests differently" and never sought "to execute any agreement with TCB related to the Tails or to any supposed right of Ginnie Mae to extinguish TCB's priority lien upon the Tails." *Id.* Nor can it be said that Ginnie Mae merely *assumed* it maintained authority over TCB's interest, because "Ginnie Mae required . . . other lenders to execute contemporaneous agreements that expressly extinguished their liens upon an exercise of Ginnie Mae's extinguishment rights against RMF." *Id.* at 19–20; *see also* ECF No. 1 at 10–11.

Second, the Guide. Defendants and Plaintiff emphasize Chapters 23 and 35, respectively. ECF Nos. 30-1 at 16; 44 at 21. Chapter 23 "provides that [Ginnie Mae] has the right to '[e]xtinguish any redemption, equitable, legal, or other right, title, or interest of the Issuer, *and anyone claiming through the Issuer*, in the mortgages in pools and loan packages for which the Issuer has Issuer responsibility.'"). ECF No. 30-1 at 16 (quoting ECF No. 30-2 at 26). But Plaintiff points to Chapter 35, which provides that "[t]he descriptions found in [Chapter 23] addressing the grounds for declaring an Issuer default and the remedies available . . . apply to HMBS pools, *except as modified in the HMBS Guaranty Agreement*[.]" ECF No. 44 at 22 (quoting ECF No. 30-2 at 53).

Because Chapter 35 — which postdates Chapter 23 — "specifically applies to HECM loans and contains its own extinguishment clause," Fifth Circuit precedent counsels that it be given greater weight. *Id.*; *see 20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 721 (5th Cir. 2019) ("[S]pecific terms . . . are given greater weight than general language[.]"); *Davey v. First Command Fin. Servs., Inc.*, No. 4:09-CV-711-A, 2010 WL 446081, at *3 (N.D. Tex. Feb. 5, 2010). And Chapter 35's extinguishment clause applies to issuers only. *See* ECF No. 30-1 at 34

7

("If Ginnie Mae declares a default and extinguishment under the applicable Guaranty Agreement, the *Issuer* forfeits and waives any and all rights to reimbursement or recovery of any of its own funds used to satisfy the obligations of the HECM mortgagor . . . .") (emphasis added). Accordingly, neither the Guaranty Agreement nor the Guide forecloses Plaintiff's claims.

    **II.**    **Plaintiff's "arbitrary and capricious" claim may not be considered.**

As referenced *supra*, Plaintiff avers that Ginnie Mae acted arbitrarily and capriciously "when it extinguished TCB's interest in the Tails." ECF No. 44 at 23. But it does so — for the first time — in its response to Defendants' Motion. This it cannot do. *See Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 462 (5th Cir. 2016) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss."). Nor can it be said that Plaintiff's two APA claims are meaningfully equivalent. *See Texas v. United States*, 524 F. Supp. 3d 598, 632 (S.D. Tex. 2021). Accordingly, the Court declines to consider Plaintiff's "arbitrary and capricious" claim.

    **III.**    **Plaintiff's promissory estoppel claim fails as a matter of law.**

Defendants argue that Plaintiff's promissory estoppel claim (1) is barred by sovereign immunity due to the Federal Tort Claims Act's ("FTCA") misrepresentation exception, and (2) is improperly pled. ECF No. 30-1 at 25–26.

First, sovereign immunity. The FTCA provides a limited waiver of sovereign immunity for certain tortious government conduct. *Joiner v. United States*, 955 F.3d 399, 403 (5th Cir. 2020); 28 U.S.C. § 1346. "Under the FTCA's misrepresentation exception, the FTCA's limited waiver . . . does not apply to claims that arise out of alleged misrepresentations." *Hanna v. United States*, No. 20-30581, 2021 WL 5237269, at *1 (5th Cir. Nov. 10, 2021). That exception "bars claims for both negligent and intentional misrepresentation." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1031 (5th Cir. 2011) (citing *Block v. Neal*, 460 U.S. 289, 295–96 (1983)).

8

Here, Plaintiff stylizes its claim as an allegation "that Ginnie Mae changed its position rather than engaged in misrepresentation." ECF No. 44 at 27. In other words, Ginnie Mae's alleged assurances — that it (1) "would provide adequate support for TCB's ability to monetize the financed Tails in the event of [Ginnie Mae's] seizure," and (2) "TCB would be able to look to the Collateral for repayment even if Ginnie Mae were to seize RMF's" mortgage-servicing rights — were not misrepresentations because they were genuine when made. *Id.* But this argument collides with Fifth Circuit precedent.

In *Williamson v. United States Department of Agriculture*, the Fifth Circuit affirmed the dismissal of a claim based on the Farmers Home Administration's ("FmHA") unfulfilled promise to give a farmer a loan if he sold some land. 815 F.2d 368, 378 (5th Cir. 1987). Because the farmer "relied on the FmHA's representation that he would receive a loan in selling his land, his claim was barred." *Life Partners Inc.*, 650 F.3d at 1031. So too here. Plaintiff itself states that "the loans TCB made . . . had been *induced* by Ginnie Mae *and were made in reliance on the assurances* that Ginnie Mae and FHA had provided to TCB." ECF No. 1 at 20 (emphasis added). Hence, Plaintiff's promissory estoppel claim must be dismissed, and Defendants' argument regarding improper pleading need not be addressed. Both the facts at hand and Fifth Circuit precedent counsel that result.

**IV.  Plaintiff's tortious interference claim does not fail as a matter of law.**

Defendants similarly claim that Plaintiff's "tortious interference with property rights" claim (1) is barred by sovereign immunity, and (2) is improperly pled. ECF No. 30-1 at 28–29.

"Although Congress waived sovereign immunity for certain torts in the FTCA, the waiver does not extend to claims 'arising out of . . . interference with contract rights.'" *Id.* at 28 (quoting 28 U.S.C. § 2680); *Kosak v. United States*, 465 U.S. 848, 852 (1984). Accordingly, a plaintiff's claim is barred "when the underlying governmental conduct 'essential' to [its] claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action." *Truman v. United States*, 26 F.3d 592, 594

(5th Cir. 1994); *Mangalvedkar v. United States*, No. 3:12-CV-4802-L, 2013 WL 2370547, at *6 (N.D. Tex. May 31, 2013).

But Plaintiff's claim "is for tortious interference with *property* rights" — a wholly separate action under Texas law. *See Suprise v. DeKock*, 84 S.W.3d 378, 380 (Tex. App. 2002) ("Texas law is well settled that '[a]ny intentional invasion of, or interference with, property, property rights, personal rights or personal liberties causing injury without just cause or excuse is an actionable tort.'") (citing *Cooper v. Steen*, 318 S.W.2d 750, 753 (Tex. Civ. App. 1958)). And TCB's property rights — as pled — are grounded in "the bankruptcy court's DIP financing order." ECF No. 44 at 28; *see also* ECF No. 1 at 14 ("On December 8, 2022 the Bankruptcy Court entered an interim order (the 'Second Interim DIP Order') approving DIP financing, including the financing of HECM Tails by TCB."); *id.* ("In short, TCB's DIP financing was secured by a first priority, perfected lien on the same HECM Tails that served as collateral under the pre-bankruptcy Tail Agreement."). Hence, the FTCA poses no obstacle to Plaintiff's tortious interference claim.

Lastly, the pleading standards. The elements of tortious interference with property rights are: (1) an interference with one's property or property rights; (2) such interference was intentional and caused damage; and (3) the interference was conducted with neither just cause nor legal excuse. *Edberg v. Laurel Canyon Ranch Architectural Rev. Comm.*, No. 04-10-00395CV, 2011 WL 541134, at *5 (Tex. App. Feb. 16, 2011); *Robles v. Mann*, No. 13-14-00211-CV, 2016 WL 1613316, at *7 (Tex. App. Apr. 21, 2016). And the Complaint alleges that (1) "Ginnie Mae interfered with TCB's rights in the Tails;" (2) "Ginnie Mae intentionally interfered with TCB's property rights by unlawfully extinguishing TCB's interest in the Tails;" and (3) "Ginnie Mae's position is not supported by law, statute, or contract." ECF No. 44 at 30; *see also* ECF No. 1 at 23. The foregoing — in light of this Court's analysis *supra* — satisfies Plaintiff's burden at this stage.

CONCLUSION

Defendants' Motion is **GRANTED IN PART** as to Plaintiff's "arbitrary and capricious" and promissory estoppel claims — the former of which may not be considered by the Court and the latter of which fails as a matter of law. The rest of Plaintiff's claims may proceed.

**SO ORDERED**.

April __3__, 2024

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE