IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| TEXAS CAPITAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>GOVERNMENT NATIONAL<br>MORTGAGE ASSOCIATION, *et al.*,<br><br>Defendants. | 2:23-CV-156-Z |

**MEMORANDUM OPINION AND ORDER**

Before this Court is the Motion to Transfer Venue ("Motion") (ECF No. 55), filed by the United States on behalf of its agencies the Government National Mortgage Association and the United States Department of Housing and Urban Development ("Defendants"). Having reviewed the Motion, briefing, and relevant law, the Court **DENIES** the Motion. Defendants filed a Motion to Defer Ruling on Plaintiff's Motion for Partial Summary Judgment (ECF No. 65) on August 8, 2024. Because the Court has resolved the Motion to Transfer Venue in this Order, Defendants' Motion to Defer Ruling on Plaintiff's Motion for Partial Summary Judgment is **DENIED** as **MOOT**.

BACKGROUND

Plaintiff Texas Capital Bank ("TCB") and Defendant Government National Mortgage Association ("Ginnie Mae") dispute the status of a TCB "first priority lien" relating to the Home Equity Conversion Mortgage ("HECM") program. ECF Nos. 1 at 1; 30-1 at 7. The HECM program enables seniors to "retire comfortably by taking out loans against the value of their homes and receiving advance payments (or draws)." ECF No. 1 at 2.

On November 30, 2022, Reverse Mortgage Funding LLC ("RMF") — one of the nation's largest HECM lenders — filed for bankruptcy. *Id.* When RFM subsequently failed to fund draws owed to seniors, Defendants "urgently sought to identify an entity willing to loan money to RMF so that [it] could make its required payments." *Id.*

Plaintiff was that entity. Plaintiff claims Defendants induced it to lend millions to RMF, that Defendants consented to its "first priority, perfected lien" on certain HECM collateral, and then they declared it null. ECF Nos. 1 at 4; 44 at 7. So, Plaintiff brought three claims against Defendants. ECF No. 1. This Court dismissed some of those claims but permitted one of Plaintiff's APA claims and Plaintiff's tortious interference claim to continue. ECF No. 48.

Following this Court's partial denial of Defendants' Motion to Dismiss, Defendants filed this Motion to Transfer. ECF No. 55. Defendants filed this Motion over eight months after the commencement of litigation. They allege that the Fifth Amended and Restated Loan and Security Agreement between TCB and RMF ("Tail Agreement"), which governed the loan from TCB to RMF, contained a forum selection clause that TCB violated. ECF No. 55 at 4.

The forum selection clause provided that venue "of any litigation involving this Agreement or any Loan Document shall be maintained in . . . Dallas County, Texas, to the exclusion of all other venues." ECF No. 55-2 at 36. Further, the Tail Agreement states that only TCB and RMF are bound by the agreement and that "no Person other than Borrower [RMF] and Bank [TCB] . . . shall be entitled to rely upon, or to raise as a defense, in any manner whatsoever, the failure of . . . Bank to . . . comply with any such term or provision." *Id.* at 37. The Tail Agreement was not between TCB and Defendants, but they nevertheless seek enforcement of its forum selection clause. *Id.* at 1.

**LEGAL STANDARD**

"A district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Valid forum selection clauses represent the parties' consent under section 1404(a) and so are presumptively enforceable because they "represent[] the parties' agreement as to the most proper forum." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). They "[should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quoting *Stewart*, 487 U.S. at 33) (alteration in original).

But a nonsignatory to an agreement, as a "general proposition," cannot lay claim to the benefit of a forum selection clause. *Ney v. 3i Grp., PLC*, No. 1:20-CV-1142, 2021 WL 8082411, at *9 (W.D. Tex. Apr. 13, 2021) (quoting *Pinto*, 526 S.W.3d at 443). A party that agreed to a forum selection clause may not foresee that clause being enforced against it by others with whom it did not agree. So, between a signatory and a nonsignatory, there is no "agreement as to the most proper forum." *Stewart*, 487 U.S. at 31.

Yet, in some "limited circumstances" courts may nevertheless enforce on equitable grounds a forum selection clause invoked by a nonsignatory. *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 445, 441 (5th Cir. 2022). The Fifth Circuit has explicitly recognized the "dubious" "closely related" doctrine. *Id.* at 441, 439. The closely related doctrine permits nonsignatories to "an agreement to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non-signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." *Id.* at 439 (quoting *Fasano v. Li*, 47 F.4th 91, 103 (2d Cir. 2022)). The doctrine is "context specific" and because it is in equity's

bailiwick, it does not have a "rigid test" for its application. *Id.* at 442. Courts are only permitted to give it "narrow application." *Id.* at 442 n.8. To determine whether it applies, the Fifth Circuit has recognized a litany of factors. *Id.* at 440. Four are key: "(1) common ownership between the signatory and non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause specifically." *Id.* at 442. If the nonsignatory can establish these then it may hold the signatory to its forum selection clause.

That is, unless the signatories say they may not do so in the agreement itself. When parties exclude all others from enforcing or benefitting from the terms of the agreement, they do not foresee that nonsignatories to the agreement may do so. *See, e.g., Fiesta Mar, LLC v. ACON Invs., LLC*, No. H-18-4704, 2019 WL 3080824, at *5 (S.D. Tex. June 11, 2019) (holding that regardless of whether the closely related doctrine applied to the parties or not, it is "not foreseeable that they would be subject to" an agreement's forum selection clause when it "would contravene the parties' expressed intent"); *WorldVentures Holdings, LLC v. Mavie*, No. 4:18-CV-393, 2018 WL 6523306 at *9 n.14 (E.D. Tex. Dec. 12, 2018) (nonparties may not invoke a forum selection clause if the agreement says nonparties may not benefit from the agreement). Federal and state courts consistently hold that a nonsignatory cannot invoke a forum selection clause found in an agreement that "disclaims any intent to extend the contract's benefits to nonparties." *Fiesta Mart*, 2019 WL 3080824 at *5 (quoting *Pinto v. Tech. Ventures, L.P.*, 526 S.W.3d 428, 445 (Tex. 2017)); *see also* John F. Coyle & Robin J. Effron, *Forum Selection Clauses, Non-Signatories, and Personal Jurisdiction*, 97 Notre Dame L. Rev. 187, 207 n.67 (2021) (noting the "courts will not apply [the closely related doctrine] when the contract contains a no-third-party-beneficiaries

clause" and listing a host of supporting precedent). This Court holds consistent with these precedents.

### ANALYSIS

Defendants are nonsignatories to the Tail Agreement. ECF No. 55-2. The plain terms of the Tail Agreement between TCB and RMF explicitly states that no others may invoke or rely on the terms of the Tail Agreement "in any manner whatsoever." *Id.* at 37. Defendants do not address this hurdle at all in their briefing. They instead argue that *Franlink* supplanted a third-party beneficiary analysis when determining what nonsignatories can invoke in an agreement. That is true. *Franlink*, 50 F.4th at 441; *see* Coyle & Effron, *supra*, at 194–97 (explaining the pre–closely-related test approach to nonsignatories and forum selection clauses involved a third-party beneficiary analysis). They continue and say it is "logically flawed to say that a party cannot be closely related because the contract did not intend to create third-party beneficiaries." ECF No. 64 at 4.

But Defendants confuse the issues. That is because *despite* a nonsignatory being closely related, it cannot invoke a forum selection clause if the terms of the agreement prohibit it. *See Fiesta Mart*, 2019 WL 3080824 at *5 (holding that "*no matter how closely* [the parties] may have been related . . . it was not foreseeable that they would be subject to" the forum selection clause because the agreement barred it) (emphasis added); Coyle & Effron, *supra*, at 207 n.67 (listing cases where the closely-related doctrine applies but is nevertheless not applicable because of the terms of the agreement). Parties may be closely related and yet not third-party beneficiaries. *Cf.* ECF No. 64 at 4. But nonsignatories — whether they are closely related or not — may not lay claim to forum selection clauses in a contract that says none may do so.

5

That is enough to deny Defendants' motion. But even if the Tail Agreement permitted nonsignatories to invoke its terms, Defendants are not closely related under this "narrow" doctrine. *Franlink Inc.*, 50 F.4th at 442 n.8. Defendants satisfy few of the key factors.

RMF and Defendants are not commonly owned. *Franlink*, in explaining and applying the "key factor" of common ownership, clearly meant it to refer to common ownership of the signatory and nonsignatory. *Franlink* even specifically cites the Third Circuit's factor examining the "non-signatory's ownership of the signatory." *Id.* at 440, 442 (quoting *In re McGraw-Hill Educ. Holdings LLC*, 909 F.3d 48, 63 (3d Cir. 2018)). Defendants attempt to dismiss the "rigid application" of *Franlink* by saying common ownership of an agreement's assets is sufficient. ECF No. 64 at 8. At least one other circuit agrees. *See Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013).

But considering *Franlink*'s "dubious" view of the closely related doctrine and its specific reference to a stricter interpretation of the common ownership factor, a "rigid application" of law is appropriate. *Franlink*, 50 F.4th at 441; ECF No. 64 at 8. Because RMF and Defendants are not commonly owned, *Franlink* bars application of the closely related doctrine here. *Id.* at 443 ("We reiterate that common ownership between signatory [party] and non-signatory [party] is a key factor supporting the application of the closely-related doctrine . . . .").

Defendants fare no better on the remaining factors. Defendants received no *direct* benefit from the Tail Agreement. The Tail Agreement simply references and upholds Defendants' pre-existing rights. ECF No. 55-1 at 10–11. Upholding the priority of pre-existing rights "does not constitute a direct benefit from the [Tail Agreement] itself." *Franlink*, 50 F.4th at 442. And while Defendants were aware of "the agreement generally," they provide no evidence that they had "awareness of the forum selection clause particularly." *Id.* (requiring an "evidentiary basis"

6

to establish awareness of a forum selection clause). They simply ask the Court to infer that because they were involved in negotiating a prior version of the Tail Agreement, they had specific knowledge of the forum selection clause. ECF No. 64 at 9–10. And hearkening to a case where parties did "not raise on appeal the issue" does not establish this factor. *Ney v. 3i Grp., P.L.C.*, No. 21-50431, 2023 WL 6121774, at *5 (5th Cir. Sept. 19, 2023). Defendants had eight months and numerous opportunities to demonstrate their specific awareness of the forum selection clause and did not do so. ECF No. 61 at 14–17. This Court holds that Defendants did not establish the factors to satisfy the closely related test to permit nonsignatory enforcement of the Tail Agreement's forum selection clause.

Accordingly, the Court **DENIES** Defendants' Motion to Transfer this case to the Dallas Division of the Northern District of Texas and **DENIES** as **MOOT** Defendants' Motion to Defer Ruling on Plaintiff's Motion for Partial Summary Judgment.

**SO ORDERED**.

September **3**, 2024

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE