**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| TEXAS CAPITAL BANK, <br><br> Plaintiff, <br><br> v. <br><br> GOVERNMENT NATIONAL MORTGAGE ASSOCIATION and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br><br> Defendants. | Civil Action No. 2:23-cv-00156 <br><br> Judge Kacsmaryk |

<u>**PLAINTIFF'S BRIEF IN SUPPORT OF ITS RESPONSE OPPOSING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................2

    A.    Facts .................................................................................................................2

    B.    Procedural History ...........................................................................................6

LEGAL STANDARD...................................................................................................................6

ARGUMENT ................................................................................................................................7

I.    THE COURT SHOULD DENY SUMMARY JUDGMENT ON THE APA CLAIM..................................................................................................................7

    A.    Ginnie Mae Cannot Extinguish Unpooled HECM Tails ..........................................7

    B.    The Unpooled HECM Tails Are Not "Inseparable" From The Rest Of The HECM Loans ...........................................................................................................8

    C.    Defendants Other Statutory Arguments Fail.............................................................11

II.    THE COURT SHOULD DENY SUMMARY JUDGMENT ON THE TORTIOUS INTERFERENCE WITH PROPERTY CLAIM ..........................................13

CONCLUSION................................................................................................................................14

## TABLE OF AUTHORITIES

**Page**

### Cases

*Boudreaux v. Swift Transp. Co., Inc.*,
    402 F.3d 536 (5th Cir. 2005) ...................................................................................................7

*In re Reverse Mortgage Investment Trust Inc.*,
    Case No. 22-11225 (Bankr. D. Del.) ........................................................................................4

*Robles v. Mann*,
    2016 WL 1613316 (Tex. App.—Corpus Christi Apr. 21, 2016, no pet.) ..........................13, 14

*Suprise v. DeKock*,
    84 S.W.3d 378 (Tex. App.—Corpus Christi 2002, no pet.) ....................................................13

*Texas v. Biden*,
    2021 WL 4552547 (N.D. Tex. July 19, 2021) ........................................................................13

*United States v. NBD Bank, N.A.*,
    922 F. Supp. 1235 (E.D. Mich. 1996) ...............................................................................10, 11

### Statutes

5 U.S.C § 706(1) . ..........................................................................................................................13

12 U.S.C. § 1721(g)(1) ......................................................................................1, 7, 8, 12, 14, 15

Plaintiff Texas Capital Bank ("TCB"), by and through its attorneys, respectfully files this Brief In Support Of Its Response Opposing Defendants' Motion for Summary Judgment (ECF No. 84), and states as follows:

## **INTRODUCTION**

This Court's prior order denying TCB's Motion for Partial Summary Judgment (ECF No. 79) found that TCB's tails are part of (or intertwined with) the HECM loans or mortgages and that those mortgages are "indivisible." Defendants now argue that it follows inexorably from those prior findings that Ginnie Mae had statutory authority to extinguish TCB's lien on the tails. But that is incorrect.

Congress demarcated the limit of Ginnie Mae's extinguishment authority, limiting that authority to the pools backing the securities that Ginnie Mae guarantees. *See* 12 U.S.C. § 1721(g)(1). And Defendants cannot skirt Congress's limitations by arguing that the tails are part of an "indivisible" mortgage. That position conflicts with the statute and would grant Ginnie Mae a windfall—the right to $28 million worth of collateral that Ginnie Mae never guaranteed and that TCB provided based on Ginnie Mae's assurance of protection.

The nature of the HMBS program itself demonstrates that the mortgages *are* divisible because it is a fundamental feature of the program that part of the mortgages are in the securitization pool and others (like the tails) are not. That is why one part of a mortgage can securitize one security, while another part can securitize a separate security or—like the tails here—be unsecuritized and held by a completely different party.

Defendants' arguments to the contrary rely on statements in this Court's prior order regarding the complex and intricate HECM and HMBS programs and structures. At minimum, that complexity warrants a full examination of the facts, including expert opinion, before any

1

determinations are made on how to apply Ginnie Mae's statutory authority to these structures. Accordingly, Defendants' motion for summary judgment on TCB's APA claim should be denied.

Defendants are also not entitled to summary judgment on TCB's tortious interference with property claim for the same reasons summary judgment is not appropriate on the APA claim. Ginnie Mae lacked a "just cause or excuse" to "interfere" with TCB's property interest in the tails given that the tails are not part of the "trust or pool" that Ginnie Mae has guaranteed and therefore has authority to extinguish.

Granting summary judgment here would enable Ginnie Mae to wipe out tens of millions of dollars of TCB's assets when TCB did absolutely nothing wrong without even allowing TCB to put Ginnie Mae to its proof at trial. This Court should deny Defendants' summary judgment motion.

## BACKGROUND

### A.   Facts

Defendant Ginnie Mae is an agency of the United States government controlled by Defendant United States Department of Housing and Urban Development. ECF No. 49 ¶¶ 12-14, 22; *see also* App. 165.[1]

Reverse mortgage loans are fully-secured, non-recourse loans, "designed for homeowners who are 62 years of age or older, and which allow homeowners to borrow against their homes so as to convert equity in the home into a line of credit." App. 9-10[2]; App. 166; *see also* ECF No. 49

---

[1]  This brief will refer to TCB's Appendix In Support of Response Opposing Defendants' Motion for Summary Judgment filed contemporaneously with this brief as "App." and to the Appendix In Support of Defendants' Motion for Summary Judgment (ECF No. 86) as "Gov't App."

[2]  *See* Motion to Supplement the Administrative Record filed contemporaneously explaining why the Expert Report of Robert S. Conway submitted on December 16, 2024

¶¶ 2, 20. "Reverse mortgages do not have a fixed term and are usually repaid in one payment (*e.g.*, after the death of the borrower or when the property is no longer the primary residence of the borrower)." App. 9-10. Moreover, unlike traditional "forward" mortgages, reverse mortgage borrowers do not make periodic out-of-pocket interest and amortization payments. *Id.* Rather, the loan balance on reverse mortgages increases by accrued interest until repayment. *Id.*

To decrease lenders' risk in providing reverse mortgage loans, the Federal Housing Administration ("FHA") implemented a program (the "HECM Program"). Congress authorized HECM loans as a demonstration project in 1988 and the HECM loans were made a permanent program in 1999. App. 11-12. The FHA guarantees HECM loans at the mortgage loan level (i.e., for individual loans, thus reducing risk for borrowers and lenders). App. 9; ECF No. 85 at 6.

Generally, borrowers draw down on HECM loans, receiving their loan in different payments (or draws). App. 12-13. Portions of a HECM loan, including the initial draw, subsequent draws or other amounts funded on behalf of the borrower, are referred to as "Participations." App. 12-13; ECF No. 85 at 8. Thus, for example, when a HECM borrower makes an initial draw on his or her loan, the amount and the associated fees would constitute a Participation. App. 12-13. That Participation can be securitized (or pooled) with other eligible Participations from other HECM loans into a Ginnie Mae security that is sold in the capital markets. App. 12-14. Those securities ("HMBS"), which are backed by certain Participations in various HECM loans, are guaranteed by Ginnie Mae for the protection of the HMBS investors. App. 12-13; ECF No. 85 at 6. Ginnie Mae does not guaranty individual HECM loans or Participations. App. 32-34.

---

("Conway Report") is proper summary judgment evidence for the Court to consider when resolving this motion as to both the APA and tortious interference with property claims.

Additional draws made by a HECM borrower on his or her HECM loan are distinct Participations in that loan that accrue to the loan balance every month and are referred to as Tails. App. 13-14; ECF No. 85 at 8. HECM tails are not automatically pooled or securitized. *See* App. 13-14, 17, 29; ECF 30-1 at 9; *see* App. 202. A HECM tail is a separate Participation which is not guaranteed by Ginnie Mae unless and until it is put into a pool or trust that issues securities backed by a Ginnie Mae guaranty. Ginnie Mae has never, and currently does not, guarantee unpooled/unsecuritized Participations, including the tails at issue in this case. *See* App. 17; App. 202; *see also* ECF No. 49 ¶ 31. In other words, "unpooled/unsecuritized Tails are not 'pooled HECM mortgages'" and are not guaranteed by Ginnie Mae. This is illustrated below:

**FIGURE 1: ILLUSTRATION OF UN-SECURITIZED TAILS**

Source: The Brattle Group Illustration of un-securitized Tails, based on Edward J. Szymanoski, Alven Lam, and Christopher Feather, "Financial Sustainability and the Home Equity Conversion Mortgage: Advancing Fiscal Soundness and Affordable Financing for Senior Homeowners," in "Cityscape," A Journal of Policy Development and Research 19(1) (2017), pp. 59–60.

App. 14. And the HECM Guide recognizes the split between securitized HECM Participations and unsecuritized Tail Participations. App. 32-34. Indeed, unpooled/unsecuritized Tail Participations are insured by the FHA, not Ginnie Mae. *Id.*

Reverse Mortgage Funding LLC ("RMF") was an HMBS Issuer. *See, e.g.*, App. 194. It filed for bankruptcy in November 2022. *See In re Reverse Mortgage Investment Trust Inc.*, Case No. 22-11225 (Bankr. D. Del.); ECF No. 49 ¶¶ 3, 38. In December 2022, TCB loaned tens of

4

millions of dollars to RMF that, along with certain pre-petition loans, were secured by a first-priority lien in certain collateral. *See* App. 266-67. The collateral includes:

> [T]he following, wherever located, in which [RMF] now has or at any time hereafter has or acquires any right, title or interest, and all Proceeds and products thereof, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto: …
>
> (a) Borrower's rights, title and interest in HECM Tails made by Borrower for the purpose of pooling and securitizing into a HMBS and delivering same to a HECM Tail Investor, and any and all instruments or certificates representing such HECM Tails; …
>
> (i) all insurance, claims for insurance, and rights to guaranty repayments accruing with respect to the HECM Tails; …
>
> (vi) all Accounts, Proceeds, payments, entitlements and rights to payments, in each case, arising out of HECM Tails.

App. 198; App. 266-67 (incorporating foregoing definition). And this collateral, including the Tails in this case, has never been pooled/securitized. App. 26-27.

In late December 2022, after TCB had funded the foregoing loans, "Ginnie Mae extinguished RMF from the [HMBS] program and seized and assumed control of the servicing of RMF's HMBS portfolio consisting of over 30% of the HMBS market with a value of $20 billion." App. 424; *see also* ECF No. 49 ¶ 53. Ginnie Mae has since asserted that its extinguishment of RMF's rights in the pooled mortgages also extinguished TCB's lien on its collateral. ECF No. 30-1 at 6 (asserting that "GNMA had a right to extinguish RMF's interest, which necessarily eliminated TCB's interest"); ECF No. 1 ¶ 9; *see also* App. 548-51. As such, since December 2022, "[a]ll funds on the unsecured balances have been sent to [Ginnie Mae]." *See* App. 552.[3]

---

[3] In response to learning that TCB's money was being sent to Ginnie Mae, RMF commented that it "should infuriate TCB" and was "really effed up". *See* App. 552.

5

### B.     Procedural History

On October 4, 2023, TCB sued Ginnie Mae for unlawfully purporting to extinguish TCB's lien on its collateral, including the tails.  TCB's Complaint asserted three claims: (1) an APA claim; (2) a promissory estoppel claim; and (3) a tortious interference with property claim.  ECF No. 1. Ginnie Mae moved to dismiss the complaint.  ECF No. 30.  This Court denied the motion as to TCB's claim that Ginnie Mae exceeded its statutory authority in violation of the APA and TCB's claim for tortious interference with property rights, but granted the motion as to TCB's promissory estoppel claim.  ECF No. 48 at 11.  In the order denying Defendants' motion to dismiss, the Court rejected Defendants' argument that "Ginnie Mae necessarily extinguished TCB's interest when it extinguished RMF's" interest based "on the statutory text."  ECF No. 48 at 6.

Following this Court's order denying Defendants' motion to dismiss with respect to TCB's APA and tortious interference with property claims, TCB moved for partial summary judgment on its APA claim.  The Court denied that motion, based on a consideration of the administrative record, concluding that "GNMA extinguished RMF's rights" in accord with its authority under Section 1721 and in turn "TCB's lien … [was] extinguished because of GNMA's action."  ECF No. 79 at 13-14.  Defendants now move for summary judgment on TCB's APA and tortious interference with property claims.  ECF No. 84.

## LEGAL STANDARD

Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  When resolving a summary judgment motion, a court must "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted).

## ARGUMENT

**I.   THE COURT SHOULD DENY SUMMARY JUDGMENT ON THE APA CLAIM**

Pursuant to 12 U.S.C. § 1721(g)(1), Congress provided Ginnie Mae with the authority to extinguish certain interests in mortgage loans *if*: (1) the extinguishment is permitted by a contract; (2) the contract is between Ginnie Mae and an issuer; ***and*** (3) the extinguishment is of rights and interests in mortgages "constituting the trust or pool against which the guaranteed securities are issued." Here, as TCB has previously described, none of the requirements are satisfied. ECF No. 57 at 6-9. But at the very least, the tails are *not* part of the trust or pool against which the securities guaranteed by Ginnie Mae have been issued. As described below, TCB respectfully submits that is plain from the language of the statute and Ginnie Mae's own admissions. It is also supported by TCB's expert, which the Court did not have the benefit of in denying TCB's summary judgment motion. The Court should have the benefit of further fact discovery regarding the nature of HECM Loans, the complex structure of HMBS, and the tails. Therefore, summary judgment should be denied.

**A.   Ginnie Mae Cannot Extinguish Unpooled HECM Tails**

Defendants' motion for summary judgment must be denied because Ginnie Mae exceeded its authority when it extinguished TCB's rights in the HECM Tails—property that was never pooled, never securitized, and never guaranteed by Ginnie Mae.

The statute governing Ginnie Mae's extinguishment authority expressly limits that authority to property within the trust or pool against which the securities guaranteed by Ginnie Mae have been issued:

> [Ginnie Mae] is hereby empowered . . . to provide by contract with the issuer for the extinguishment, upon default by the issuer, of any redemption, equitable, legal, or other right, title, or interest of the issuer in any mortgage or mortgages ***constituting the trust or pool against which the guaranteed securities are issued***; and with respect to any issue of guaranteed securities, in the

7

> event of default and pursuant otherwise to the terms of the contract, the mortgages *that constitute such trust or pool* shall become the absolute property of the Association subject only to the unsatisfied rights of the holders of the securities *based on and backed by such trust or pool*.

12 U.S.C. 1721(g)(1) (emphasis added). The statute makes clear, multiple times, that Ginnie Mae's extinguishment authority is limited to property that constitutes, *i.e.*, "makes up" or "forms" the trust or pool that Ginnie Mae is guaranteeing. *See Constitute*, MERRIAM-WEBSTER, https://tinyurl.com/bde99725 (last visited Feb. 21, 2025).[4] This limitation is not by happenstance; it makes perfect sense: as described above, Ginnie Mae does not guaranty HECM loans or mortgages, but rather guarantees securities that are specifically backed by what is in the pool or trust. *See supra* pp. 3-4. Ginnie Mae gets paid a guaranty fee based on the unpaid principal balance of all Participations that have been securitized into HMBS securities; it does not get paid or charge any such fee on unpooled tail Participations like those at issue here. App. 32-34. Again, that is not by chance—unpooled tails are simply "not within Ginnie Mae's purview." *Id.* Instead, unsecuritized tails are insured by the FHA. *Id.* Ginnie Mae's attempt to exert rights over unpooled Tail Participations is thus inconsistent with the HECM/HMBS structure and with the economic reality that Ginnie Mae is not guaranteeing those Tail Participations. *Id.*

### B. The Unpooled HECM Tails Are Not "Inseparable" From The Rest Of The HECM Loans

Defendants try to escape the statute's express limitation by asserting that the tails should be considered part of the pool because they are "inseparable from the underlying HECM loan" and "an inextricable part of the HECM loans." ECF No. 79 at 8, 10. But those assertions discount the new fact discovery put forward in this case.

---

[4] To clarify, all agree that Ginnie Mae is perfectly entitled under Section 1721(g)(1) to utilize its extinguishment remedy as to property that "constitutes the trust or pool."

Unpooled tails are part of the underlying HECM loans, just as pooled Participations are. *See* App. 29. They both are derived from, and indeed, "constitute" part of the HECM loans. But that is not the relevant statutory question. The statutory question is whether both the unpooled tails and pooled Participations "constitute" (i.e., make up or comprise) the pool or the trust. As described, *supra* pp. 7-8, the unpooled tails do not.

In any event, Defendants' assertions are incorrect. Unpooled tails are indeed separable from the rest of the HECM loans from which they are derived. The initial draws under a HECM loan are put into a trust or pool and securitized, while the tail that is a part of that same HECM loan may be retained by the Issuer, separately sold or pledged and financed (as is the case here), and may or may not be subsequently securitized into a completely different pool for the benefit of different securityholders. *See* App. 30 ("Tail Participations . . . may be securitized into one or multiple HMBS securities. The emphasis here is on the word 'may.'"); App. 30-31 (Tails may be "in the HMBS issuer's inventory, potentially being funded by a lender like TCB in advance of securitizations"); App. 31-32 ("unpooled/unsecuritized Tail participations could be sold to a third party by the issuer"); ECF 85 at 8 ("Tails are simply a portion of an HECM Loan not yet securitized into a pool even though other parts (Participations) of that same HECM Loan are already securitized into a pool." (quoting ECF No. 79 at 5)).

Indeed, the entire HMBS system relies on and illustrates the divisibility of HECM mortgage loans. HECM loans are treated as divisible assets which can be securitized across multiple HMBS and guaranteed by Ginnie Mae. As described, *supra* pp. 3-4, the divisible units of HECM mortgage loans are Participations. App. 31. As Ginnie Mae expressly contemplates in the Ginnie Mae HMBS Guide, "[o]ne HECM loan may have multiple Participations in various HMBS securities throughout the life of the loan." *See* App. 13 n.29; *see also* ECF No. 79 at 4.

9

And the collateral for each HMBS includes only the individual Participation securitized in the HMBS. *See* Gov't App. 67 ("Separate Participations in a single HECM loan may serve as collateral in multiple HMBS pools."). The HMBS collateral pool is "specifically and uniquely associated with the HMBS security, which includes the related Participations." Gov't App. 66. Meaning, the collateral for an HMBS is not the entire underlying HECM loans associated with Participations in that pool; it is just those Participations in that pool. Thus, when a holder of HMBS receives an unscheduled payment from a borrower, that payment must be split, pro rata, among all HMBS securities which contain a Participation associated with that borrower's HECM loan. Gov't App. 67.

Defendants' arguments to the contrary rely on this Court's decision denying Plaintiff's summary judgment motion. The Court cited to *United States v. NBD Bank, N.A.*, 922 F. Supp. 1235 (E.D. Mich. 1996), for the proposition that the Court in *NBD* "declined to split the mortgage into securitized and unsecuritized parts," and instead found that "GNMA gained all ownership rights in the mortgages." ECF No. 79 at 13. Respectfully, that case is inapposite. The issue in *NBD* was the fact that custodial money on securitized mortgages was misappropriated. *NBD*, 922 F. Supp. at 1240-42. There was no question regarding rights to unsecuritized mortgage interests, like the unpooled tails here. Indeed, in *NBD*, the issuer, Fidelity Guarantee Mortgage Corp. was approved by Ginnie Mae in 1980. *Id.* at 1240. That was prior to HECM loans even being authorized by Congress, *see* App. 11 & n.21, and well before HMBS was established. *Ginnie Mae HMBS Program*, NRMLA ONLINE, at 2 (Nov. 4, 2013), https://tinyurl.com/3t3t4n4t. The mortgages at issue in *NBD* thus appear to be traditional "forward" mortgages, not HECM (reverse mortgage) loans. There are no tails related to forward mortgage loans, and no "Participations." *See* App. 31 ("Participations—not entire HECM loans—are the relevant economic units in the

reverse mortgage industry."). Rather, for traditional forward mortgages, the entire mortgage is part of the same securitization. Accordingly, nothing in *NBD* supports disregarding the clear statutory limit on Ginnie Mae's authority—Ginnie Mae cannot extinguish interests outside of the pools it guarantees.

Moreover, Defendants rely on factual statements in this Court's decision that did not have the benefit of fact discovery regarding the complex nature and structure of HMBS and HECM loans. For example, the decision stated: "Those 'tails' are not securitized yet. But the underlying HECM Loan *is*.... A mortgage constituting the trust or pool does include portions, like the Tails here, that may not themselves have been securitized into the pool." ECF No. 79 at 13 (emphasis in original). But, that is not how the HMBS structure works. As just described, for HMBS, only Participations (portions of HECM mortgage loans) are securitized, not entire HECM mortgage loans. Ginnie Mae's own Guide acknowledges this repeatedly. *See* Gov't App. 12 (defining "Home Equity Conversion Mortgage Participation" to mean "A Participation is ***that portion of a HECM loan*** that has been pooled by the Issuer." (emphasis added)); Gov't App. at 12 (defining "Home Equity Conversion Mortgage Security (HMBS)" to mean "A financial obligation ***secured by a pool of Participations*** related to HECMs." (emphasis added)). Moreover, tails may never be securitized, and if they are securitized, it is not into the same pool with the Participations that represent the initial draws on the HECM loans.

### C. Defendants Other Statutory Arguments Fail

Defendants argue that they acted within the scope of the statute because "[t]he statute requires that the Tails follow the other parts of the HECM loan and become the absolute property of G[innie Mae]." ECF No. 85 at 14. The statute, however, says the opposite—it makes clear that what becomes the absolute property of Ginnie Mae is limited to those "mortgages ***that constitute such trust or pool***." 12 U.S.C. § 1721(g)(1) (emphasis added). Defendants ask this Court to

11

rewrite the statute to say "mortgages [*any parts of which*] constitute such trust or pool." *Id*. The statute does not say that, and it should not be rewritten, particularly to permit Ginnie Mae to give itself a windfall. This Court found that as to mortgages, the statute "does not distinguish between the portions securitized and unsecuritized." ECF No. 79 at 12. But the statutory language—"that constitute such trust or pool"—makes such a distinction. Thus, the statute limits Ginnie Mae's authority to securitized (pooled) interests that Ginnie Mae has guaranteed, and excludes from Ginnie Mae's authority unsecuritized interests that Ginnie Mae has not guaranteed. Being securitized is exactly what being part of a "trust or pool" means. *See* App. 6-7 ("The terms pooling and securitization are interchangeable and related to creating the mortgage-backed security for which Ginnie Mae provides a guaranty.").

Nor can Defendants justify their statutory overreach by claiming that TCB's rights were "subject to the rights and interests of Ginnie Mae." ECF 85 at 4. The fact that TCB's rights were subject to the rights and interests of Ginnie Mae does not *expand* Ginnie Mae's rights. As described, Ginnie Mae has no extinguishment rights as to any property that does not constitute the trust or pool that Ginnie Mae has guaranteed. Thus, the fact that Ginnie Mae may have rights as to some of the mortgage participations (those in the pools it has guaranteed) does not then give Ginnie Mae rights over mortgage participations (such as tails) outside of those pools. Defendants' argument is thus not relying on TCB's rights being "subject to Ginnie Mae's," but rather their argument depends on impermissibly *expanding* Ginnie Mae's rights beyond what Congress provided.[5]

---

[5] In their summary judgment motion, Defendants respond to a claim that TCB has not made. ECF No. 85 at 16. TCB has not filed a claim under 5 U.S.C. § 706(1) of the APA. Accordingly, TCB sees no reason to respond to Defendants' contention that TCB is arguing an alternative APA theory. However, TCB reserves all rights.

## II. THE COURT SHOULD DENY SUMMARY JUDGMENT ON THE TORTIOUS INTERFERENCE WITH PROPERTY CLAIM

Under Texas law, a plaintiff alleging tortious interference with property must prove "(1) an interference with one's property or property rights occurred; (2) such interference was intentional and caused damage; and (3) the interference was conducted with neither just cause nor legal excuse." *Robles v. Mann*, 2016 WL 1613316, at *7 (Tex. App.—Corpus Christi Apr. 21, 2016, no pet.); *accord Suprise v. DeKock*, 84 S.W.3d 378, 380 (Tex. App.—Corpus Christi 2002, no pet.).[6] Ginnie Mae argues summary judgment is appropriate because there are no disputes of material fact and it is entitled to judgment as a matter of law as to elements (1) and (3). ECF No. 85 at 12-15. Not so.

Start with interference. A reasonable jury could conclude Ginnie Mae intentionally "interfer[ed] with [TCB]'s property rights" in the unsecuritized tails when it entirely extinguished TCB property interest. *Robles*, 2016 WL 1613316, at *7. Here, Ginnie Mae extinguished RMF's interest in the pooled mortgages. It then made the intentional, *post hoc* decision to treat this action as an extinguishment of TCB's interest in the unpooled tails. As a result, Ginnie Mae claims this means that TCB no longer has any legal interest in its property worth tens of millions of dollars. This action by Ginnie Mae nullifying TCB's property interest in the unpooled tails qualifies under any definition as "interference," not least because TCB has been entirely deprived of its "enjoyment and use of" its property. *Suprise*, 84 S.W.3d at 382.

---

[6] TCB has filed a Motion to Supplement the Administrative Record simultaneously to this brief. In all events, TCB's tortious interference with property claim under Texas law is not subject to the APA record rule and the Court should consider the Conway Report when ruling on Defendants' summary judgment motion as to this claim. *See Texas v. Biden*, 2021 WL 4552547, at *3–4 (N.D. Tex. July 19, 2021) (Kacsmaryk, J.) (allowing the introduction of extra-record evidence on non-APA claims brought along with APA claims).

Next, just cause or excuse. A reasonable jury could also conclude that Ginnie Mae's "interference was conducted with neither just cause nor legal excuse." *Robles*, 2016 WL 1613316, at *7. That is because the existence of a "just cause" or "legal excuse" turns entirely on whether Ginnie Mae had statutory authority under Section 1721(g)(1) to extinguish TCB's rights in the unpooled tails. If the Court agrees with TCB above that Ginnie Mae is not entitled to summary judgment on the APA claim, *supra* Part I, it should deny Ginnie Mae summary judgment on the tortious interference with property claim as well.

Defendants' preemption argument fails for the same reason. ECF No. 85 at 15-16. The argument *assumes* Ginnie Mae's actions here were lawful and did not violate the APA. On the contrary, Ginnie Mae exceeded its statutory authority and had no legal basis to extinguish TCB's interest in the tails. Because Defendants are not entitled to summary judgment on the APA claim, they are also not entitled to summary judgment on the tortious interference with property claim.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the summary judgment motion.

| | |
|---|---|
| Date: February 21, 2025 | Respectfully submitted, |

                                                        */s/*     *Elinor C. Sutton*

Isaac Nesser – *Admitted Pro hac vice*
isaacnesser@quinnemanuel.com
Heather Christenson - *Admitted Pro hac vice*
heatherchristenson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

William A. Burck – *Admitted Pro hac vice*
williamburck@quinnemanuel.com
Christopher G. Michel - *Admitted Pro hac vice*
christophermichel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314

Matthew Scheck - *Admitted Pro hac vice*
matthewscheck@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 West 6th Street, Suite 2010
Austin, Texas 78701

Elinor C. Sutton
Texas Bar No. 24129804
elinorsutton@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
3100 McKinnon Street, Suite 1125
Dallas, Texas 75201

Thomas C. Riney
Texas Bar No. 16935100
tom.riney@uwlaw.com
C. Jason Fenton
Texas Bar No. 24087505
jason.fenton@uwlaw.com
UNDERWOOD LAW FIRM, P.C.
500 S. Taylor, Suite 1200
Amarillo, Texas 79101
Phone:(806) 376-5613

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this memorandum was this 21st day of February 2025 served on all known counsel of record in accordance with the Federal Rules of Civil Procedure.

/s/ *Elinor C. Sutton*
Elinor C. Sutton